**MEYER GOLDBERG, INC., of LORAIN d/b/a Goldberg Supermarkets, Inc. & Meyer Goldberg, Inc.; et al., Plaintiffs,**

**The May Department Stores Company, Intervenor-Appellant,**

v.

**FISHER FOODS, INC.; First National Supermarkets, Inc., d/b/a Pick-N-Pay Supermarkets; First National Supermarkets, Inc.; Successor of Pick-N-Pay Supermarkets, Inc., Defendants-Appellees.**

No. 86–3164.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 26, 1987.

Decided July 2, 1987.

Myron N. Krotinger, Jerome F. Weiss, Weiss, Neidtz & Petrey, Adrian B. Fink, Jr., Cleveland, Ohio, Asa D. Sokolow, Marvin R. Lange, argued, Philip Mandelker, Christopher S. Petito, Rosenman, Colin, Freund, Lewis, & Cohen, New York City, for intervenor-appellant.

John D. Leech, Michael L. Miller, John F. McClatchy, Thompson, Hine & Flory, John J. Eklund, Richard Cusick, Bruce J.L. Lowe, argued, Calfee, Halter, & Griswold, Cleveland, Ohio, for defendants-appellees.

Before MERRITT, WELLFORD and MILBURN, Circuit Judges.

WELLFORD, Circuit Judge.

In March of 1979 Meyer Goldberg, Inc., of Lorain (Goldberg) as plaintiff brought an antitrust action against defendants, Fisher Foods, Inc. and First National Supermarkets, Inc. (FNS), charging a conspiracy between the latter supermarket operations in Lorain County, Ohio to fix prices in violation of both federal and Ohio laws. Generally, it was alleged that defendants had set prices below cost in order to drive plaintiff out of business.

Shortly after commencement of this action, bankruptcy proceedings were instituted with respect to Goldberg. A trustee was appointed and a lawyer from the law firm of Fink & Greene Co. was appointed special counsel for the bankrupt. The trustee turned over various business records to the law firm for the bankrupt, including eight tape recordings which Meyer Goldberg, the principal owner and officer, apparently had made during discussions with defendants and others about the alleged conspiracy.[1]

In May of 1980, Meyer Goldberg filed a motion for protective order requesting that certain portions of the tapes not be disclosed and citing the attorney-client privilege as his basis. The defendants, including Fisher Foods, opposed this motion. Goldberg, through its trustee, filed a motion to place the tapes under seal because they contain "sensitive, privileged and confidential matters." The court granted the motion by a notation on the margin of the motion with no discussion as to the basis for its action. The action was subsequently transferred to Judge Lambros who had presided over several other criminal, private and consumer class actions involving the Cleveland area supermarkets. The case was settled and dismissed with prejudice on January 26, 1984. Nothing was said in the settlement stipulation about the sealed materials.

May Department Stores Company (May) commenced a separate action in the same federal court in August of 1981 against three supermarket chains in the Cleveland area alleging a conspiracy to violate the antitrust laws by fixing and raising food

---

1. Goldberg, personally, and his wife had unsuccessfully sought to intervene in the corporate antitrust action brought against Fisher Foods, Inc. and the other retail grocery store operator defendant. *See Meyer Goldberg, Inc., et al. v. Fisher Foods, Inc., et al.*, 717 F.2d 290 (6th Cir. 1983).

prices in Cleveland and vicinity. As part of this conspiracy, May specifically alleged that the defendants tortiously interfered with its contractual relations with food stores in order to stop further participation in May's Eagle Stamp program. The suit is still in the discovery stage.

On July 24, 1984, May notified counsel for the Goldberg trustee that it intended to serve a subpoena *duces tecum* calling for production of his copy of the Goldberg tapes. The purpose was to discover evidence of the alleged conspiracy. The Goldberg trustee responded that his law firm would not comply with such a subpoena, absent a court order, because it was prohibited from disclosing the tapes. Subsequently May filed a motion to intervene in the original action brought by plaintiff Meyer Goldberg, Inc. of Lorain. May asserts that the tapes sought contain conversations concerning defendants' price-fixing, including conversations in which those defendants attempted to persuade Goldberg to fix prices with them.

The district court denied May's motion to intervene in this earlier case which had been settled and dismissed. In so ruling, the district court concluded that its order did apply to the copy of the tape recordings in possession of counsel, and refused to vacate or modify that order so that May, not a party to those proceedings, was denied access for discovery purposes. May's motion had been opposed by the original defendants, but neither the Goldberg trustee nor Meyer Goldberg personally expressed opposition. Particularly, the district court held that "May Company has failed to show, as a threshold matter, that their [sic] claim and the main action 'have a question of law or fact in common.' Therefore, intervention in the above-captioned case is not warranted." The district court explained that confidentiality *"relied upon* by a party in entering into a settlement should not at a later date be subject to reversal of the sealing order." (Emphasis added). May has appealed from the district court's denial as a proposed intervenor.

The parties do not contest the appealability of the order in question denying May's motion, and we conclude that it is appealable and that we have jurisdiction to hear the appeal.

■ The issue presented is whether the district court abused its discretion under the circumstances in denying intervention and in continuing unabated the prior order sealing the material and information sought to be discovered. Appellant argues that May has the burden of showing a "clear abuse" of discretion, citing *Bush v. Viterna,* 740 F.2d 350, 359 (5th Cir.1984), and other authority from that circuit. Denial of intervention, however, is a matter left to the "sound discretion" of the trial court, and "unless that discretion is abused, the court's ruling will not be disturbed." *NAACP v. New York,* 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973). No higher standard than abuse of discretion is indicated. A request to lift or modify an order sealing documents or records is also "left to the sound discretion of the trial court." *Krause v. Rhodes,* 671 F.2d 212, 219 (6th Cir.), *cert. denied sub nom Att'y Gen. of Ohio v. Krause,* 459 U.S. 823, 103 S.Ct. 54, 74 L.Ed.2d 59 (1982) (quoting *Nixon v. Warner Communications,* 435 U.S. 589, 599, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978)). *See also In re "Agent Orange" Product Liability Litigation,* 104 F.R.D. 559, 572 (E.D.N.Y.1985).

Permissive intervention sought by May is required to be "timely" under Fed.R.Civ.P. 24(b). The court is mandated under that section to consider in "exercising its discretion" whether it will bring about undue "delay or prejudice." In *Olympic Refining Co. v. Carter,* 332 F.2d 260 (9th Cir.), *cert. denied,* 379 U.S. 900, 85 S.Ct. 186, 13 L.Ed.2d 175 (1964), a three year intervening period after termination of the antitrust proceedings, and a four to eight year delay after the order sealing certain documents, were held not such an unreasonable delay under the circumstances as to preclude a reversal of the district court's order denying relief by way of unsealing the material sought to be discovered in another antitrust complaint against the

same defendant. *Olympic Refining Co.* did not involve a motion to intervene; it did involve a situation similar to the underlying controversy in this case—whether a non-party to the original proceeding, may seek alleged antitrust discovery material to assist it in claims against parties accused of antitrust violations after several years had elapsed since the case had been closed.

*Martindell v. International Tel. & Tel. Corp.*, 594 F.2d 291 (2d Cir.1979), discusses a like situation: whether a non-party to private litigation might be able to obtain for investigatory purposes transcripts of the testimony of certain witnesses which had been sealed. The *Martindell* court observed that the non-party seeking the sealed material might either have sought permissive intervention under Fed.R.Civ.P. 24(b), and then sought a modification of the sealing order under Rule 26(c), or it might have sought to subpoena the material "in which [event] the issue could be raised by motion to quash or modify the subpoena." 594 F.2d at 294. Since *Martindell*, the first method has been held to be a proper method to challenge a protective order by limited intervention for discovery purposes in the Sixth Circuit. *In re Upjohn Co. Antibiotic Cleocin Products Liability Litigation*, 664 F.2d 114, 118 (6th Cir.1981). *Martindell* held that although permissive intervention had been informally granted, after balancing the respective interests, evidence given by witnesses under a protective order (Fed.R.Civ.P. 26(c)) with express expectation of use only in that proceeding should not be turned over to the United States government, the intervenor, for other use (a grand jury investigation).

It is not clear what prejudice the delay in seeking these tapes has occasioned in this case to defendants or to any of the parties. Delay in any event would not prejudice the adjudication of the rights of the original parties. *See* Rule 24(b). It is possible that the claimed privilege or confidentiality may be preserved by the court if only a portion

of the tapes in question were made available as a possible or potential resource to May in its separate antitrust proceeding, or if discovery were limited by the court. *See United States v. Zolin*, 809 F.2d 1411, 1416 (9th Cir.1987). It is clear that making records available to a party seeking to enforce the antitrust laws to prevent illegal price-setting practices is generally considered to be a matter in which the public has an interest.

We are in agreement with the *Martindell* court that May might have proceeded to attempt to discover the tapes in question either by seeking to intervene, or by seeking to subpoena the information. The purpose in use of either procedure is the same as in *Martindell:* to seek discovery of information in a related proceeding involving the same defendants. It is true, as pointed out by defendants, that May has failed to pursue vigorously its antitrust claim and counsel may have difficulty in explaining this delay before proceeding to attempt to intervene in this cause. The district court, however, did not discuss delay or prejudice as a basis for denying May relief, and there was no decision as to whether May's application was "timely."

It is significant that neither Goldberg nor the bankruptcy trustee on behalf of the original plaintiff opposed the motion by May to unseal the Goldberg tapes. The attorney-client privilege and confidentiality were the basis, at least in part, of the Goldberg and Goldberg corporation's motion for a protective order. It is not clear to what extent the tapes involve attorney-client privilege or any other claim of privilege or confidentiality. "[A]s a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings." *American Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 596 (7th Cir. 1978), *cert. denied*, 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979).[2] *See Phillips*

---

2. The trial judge cited the *Grady* case as authority for his ruling that a "collateral litigant has no right to obtain discovery materials" that may be immune from later discovery in the collateral litigation. In *Grady,* however, despite the ex- press agreement of the parties that discovery material could be used "*solely* in the preparation for trial in MCI v. ATT," the district court was affirmed in granting the government (a non-party) access to certain discovery material for use

*Petroleum Co. v. Pickens,* 105 F.R.D. 545, 550–51 (N.D.Tex.—Amarillo Div.1985). As we observed recently, both civil and criminal trials are presumptively open proceedings and open records are fundamental to our system of law. *Brown & Williamson Tobacco Corp. v. F.T.C.,* 710 F.2d 1165, 1177–79 (6th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984). *See generally* Recent Development, *Public Access to Civil Court Records: A Common Law Approach,* 39 Vand.L.Rev. 1465 (1986).

While a district court has supervisory power over its own records and files, its discretionary powers to seal these records "is 'not insulated from review merely because the judge has discretion in this domain'" because of the "long-established legal tradition," which recognizes "the presumptive right of the public to inspect and copy...." *In re Knoxville News Sentinel Co.,* 723 F.2d 470, 473–74 (6th Cir.1983) (citing *Brown & Williamson,* 710 F.2d at 1177).

The *Knoxville News Sentinel* case cited with approval an 1894 case[3] which stated that "[a]ny attempt to maintain secrecy, as to the records of this court, would seem to be inconsistent with the common understanding of what belongs to a public court of record, to which all persons have the right of access." *Id.* at 474. We also observed in that case the importance of affording interested persons a reasonable opportunity to be heard *before sealing* a court record, and stated that "[o]nly the *most compelling* reasons can justify nondisclosure of judicial records." *Id.* at 476 (emphasis added). As pointed out in *Olympic Refining Co.,* "[p]rivate treble-damage [antitrust] actions are an important component of the public interest in 'vigilant enforcement of the antitrust laws,'" 332 F.2d at 264 (citing *Lawlor v. National Screen Serv. Corp.,* 349 U.S. 322, 329, 75 S.Ct. 865, 869, 99 L.Ed. 1122 (1955)).

The record in this case nowhere reflects a confidentiality relied upon by any party now before the court, nor does it explain exactly on what basis confidentiality was properly claimed to suppress potential antitrust conduct and information from public knowledge or from a party seeking to utilize this information in a related type of private antitrust action. Fisher Foods, Inc., indeed, filed a memorandum *in opposition* to Meyer Goldberg's original motion for a protective order to seal the tapes, stating in argument in the record (J/A 54, 57), that "Mr. Goldberg has failed to demonstrate the privileged nature of his taped conversations," and that "Mr. Goldberg has waived any otherwise applicable privilege." The parties were apparently in agreement that copies of some, or a portion, of the cassette tapes in controversy had been turned over to the Justice Department or to the Federal Trade Commission.

In dealing with modification of a protective order, one court recently adopted the following standard:

Given that proceedings should normally take place in public, imposing a good cause requirement on the party seeking modification of a protective order is unwarranted. If access to protected fruits can be granted without harm to legitimate secrecy interests, or if no such interests exist, continued judicial protection cannot be justified. In that case, access should be granted even if the need for the protected materials is minimal. When that is not the case, the court should require the party seeking modification to show why the secrecy interests deserve less protection than they did when the order was granted. Even then, however, the movant should not be saddled with a burden more onerous than explaining why his need for the materials outweighs existing privacy concerns.

*Nonparty Access to Discovery Materials in Federal Courts,* 94 Harv.L.Rev. 1085, 1092 (1981). (footnotes omitted).

*In re "Agent Orange" Product Liability Litigation,* 104 F.R.D. at 570. *See also H.L. Hayden Co. v. Siemens Medical Systems, Inc.,* 106 F.R.D. 551, 554–55 (S.D.N.

---

in a separate antitrust proceeding. *See Grady,* 594 F.2d at 595. (emphasis added).

**3.** *Ex parte Drawbaugh,* 2 App.D.C. 404, 407.

Y.1985), *aff'd* 797 F.2d 85 (2d Cir.1986) (citing *Martindell* and *A.T. & T. v. Grady;* "good cause" not an invariable requirement imposed upon one seeking modification, and reliance is an "important indicator".) Protective orders may be subject to modification "to meet the reasonable requirements of parties in other litigation." *United States v. GAF Corp.,* 596 F.2d 10, 16 (2d Cir.) *modified* 26 Fed.R Serv.2d 1327 (1979). *See also Wilk v. American Medical Association,* 635 F.2d 1295, 1299 (7th Cir.1980).

██ We observe that there is no stringent showing required under Rule 24(b) that May's claim seeking intervention for purposes of discovery and the underlying action, both involving the same defendants charged with anti-competitive conduct, must have a strong nexus of common fact or law. *In re Franklin National Bank Securities Litigation,* 92 F.R.D. 468, 471 (E.D.N.Y.1981), *aff'd,* 677 F.2d 230 (2d Cir. 1982). May's purpose is not to pursue Goldberg's claim or the trustee's claim against these defendants, but rather to pursue a related claim in a somewhat similar time frame of alleged anticompetitive conduct, and to seek out discovery material to assist in that pursuit in which the public has a strong interest.

██ Under these circumstances, we REVERSE and REMAND this matter to the district court for a hearing in which the parties may be heard fully concerning May's claim to seek to unseal the records, and the district court may support its reason for indicating that any of the parties relied upon the sealing of the tapes as a basis for settlement, or for its ruling that May's claim and the main action do not "have a question of law or fact in common" in light of the limited purpose of discovery intervention only. We direct a remand, because the record does not reflect the district court's consideration of the strong underlying tradition of open records, and that only compelling reasons justify denial or continued denial of access to records of the type sought by appellant May.