**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellee,**

v.

**NATIONAL CHILDREN'S CENTER, INC., Appellee.**

**Lillie Grier, Individually and as Mother and Next Friend of Linita Grier, Appellant**

No. 97–5209.

United States Court of Appeals, District of Columbia Circuit.

Argued May 4, 1998.

Decided July 17, 1998.

Melissa Rhea argued the cause for appellant. James W. Taglieri was on the brief.

Alan D. Titus argued the cause for appellees. H. Alan Young, Thomas L. McCally and William J. Carter were on the brief.

Before: EDWARDS, Chief Judge, SILBERMAN and SENTELLE, Circuit Judges.

SENTELLE, Circuit Judge:

Lillie Grier appeals from the district court's denial of her motion to intervene for the limited purpose of obtaining access to documents under seal and to depositions covered by a protective order. We conclude that the district court abused its discretion in denying the motion, and accordingly vacate and remand.

## I.

On March 10, 1995, Grier filed suit in the Superior Court of the District of Columbia against the National Children's Center ("NCC" or "Center"), Steve Austin (a bus driver employed by NCC), and the District of Columbia. The complaint stemmed from an alleged sexual assault of Grier's blind and mentally handicapped daughter, who received care at the Center. Grier alleged that Austin, when he was supposed to be driving the younger Grier to her home, sexually assaulted her while she was in the supervision of the Center on July 24, 1994. Grier sought recovery from the defendants based on claims of assault, battery, negligence, and intentional infliction of emotional distress.

Upon agreement of all parties, the District was dismissed as a party shortly after the filing of the complaint. Following discovery, the Superior Court granted NCC's motion for summary judgment, concluding that Grier had failed to offer any evidence that Austin had acted within the scope of employment.

A few months later, we issued our decision in *EEOC v. National Children's Center, Inc.*, 98 F.3d 1406 (D.C.Cir.1996) ("*NCC*"). The underlying suit was a Title VII action brought against NCC in response to allegations of sexual harassment, including both quid pro quo and hostile work environment. After the filing of EEOC's action, two employees of the Center intervened as plaintiffs and alleged violations of Title VII and state law. The parties eventually settled all suits, and a consent decree was entered in the

EEOC action. Over the Commission's objection, the district court sealed the consent decree and portions of the record, and also issued a protective order that prohibited the use of the depositions taken in the case. Upon review, we reversed the district court's order sealing the consent decree, and remanded the case so that the district court could explain both its decision to seal portions of the record and its decision to issue a protective order as to the depositions. Specifically, we required the district court to articulate its reasons for sealing the record in light of the six factors delineated in *United States v. Hubbard,* 650 F.2d 293 (D.C.Cir. 1980), and to consider whether "good cause" existed for issuance of a protective order as explained in *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).

After becoming aware of our ruling while reading *The Daily Washington Law Reporter,* Grier suspected that there might be additional information as to whether NCC knew or should have known about the misconduct of its employees. Grier searched through portions of the record not covered by the district court's order, and discovered that Ron Austin, NCC's Transportation Director and the brother of Steve Austin, had been the subject of a number of sexual harassment complaints in connection with his work at NCC. Grier also learned that three former employees had filed sexual harassment claims of their own against NCC. Based on this new information, Grier filed a motion with the Superior Court to vacate the order of summary judgment. The court granted the motion, observing that it appeared from the motion and the attachments that NCC "may have been aware of complaints about Defendant Steve Austin prior to the filing of the instant action."

Before responding to our decision, the district court ruled ·on a motion to intervene filed by the three women who had brought sexual harassment claims against NCC. The movants sought access to the sealed documents and to the depositions covered by the protective order in *NCC.* The court first granted their motion to intervene, observing that "[i]ntervention is the proper vehicle by which third parties should seek to alter protective orders and obtain access to sealed documents even after a case is over...." The court then ruled that they should have access to the documents and depositions, subject to a protective order that restricted their use and prohibited their public dissemination. The court explained that the movants were "pursuing nearly identical litigation against the same defendant in this Court and have a significant interest in obtaining access to the documents in the instant case." Granting access to the materials, the court added, would "serve[ ] the interests of justice as well as judicial economy, since plaintiff-intervenors might reasonably seek to re-depose the participants in this case if they were denied access."

Upon remand, the district court decided that a majority of the *Hubbard* factors weighed in favor of keeping the documents under seal, except for three exhibits that it decided to release. The court also found that good cause existed for issuing the protective order, reasoning that the release of untested allegations of wrongdoing would serve no useful purpose and would invade the personal privacy of the individuals who were involved. Neither the EEOC nor NCC appealed the court's order.

Shortly thereafter, Grier filed a motion with the district court to intervene in *NCC.* Like the three movants who had successfully intervened before her, Grier sought intervention so that she could obtain access to the documents under seal and to the depositions covered by the protective order. The district court denied her motion without explanation.

Grier filed a timely notice of appeal.

## II.

Third parties who seek to intervene in an action in federal court must proceed according to Rule 24 of the Federal Rules of Civil Procedure. Rule 24 outlines two different avenues by which a court can allow an outsider to intervene—intervention of right, and permissive intervention. Fed.R.Civ.P. 24. This case involves only a motion for permissive intervention, as Grier has never asserted

that she had a right to intervene in the *NCC* action.

Before addressing the issue of whether the district court should have granted Grier's particular motion to intervene, we pause to address the anterior question of whether intervention is a procedurally appropriate course for third-party challenges to confidentiality orders.

### A.

Rule 24(b) sets the basic parameters for permissive intervention: "Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common." Fed.R.Civ.P. 24(b). When "exercising its discretion," the district court "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.*

On its face, Rule 24(b) would appear to be a questionable procedural basis for a third-party challenge to a confidentiality order. Absent a statutory basis for intervention, Rule 24(b) requires that the would-be intervenor advance a "claim or defense" that shares a common question with the claims of the original parties, with the apparent goal of disposing of related controversies together. *See Diamond v. Charles*, 476 U.S. 54, 76, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986) (O'Connor, J., concurring) ("The words 'claim or defense' manifestly refer to the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending law suit ...."); *see also Security Insurance Co. v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir.1995) ("Perhaps the most obvious benefits of intervention in general are the efficiency and consistency that result from resolving related issues in a single proceeding."). Rule 24(c), which establishes the procedure for intervention, similarly requires the movant to "serve a motion to intervene upon the parties," and to include "a pleading setting forth the claim or defense for which intervention is sought." Fed.R.Civ.P. 24(c). This language appears to limit permissive

intervention to circumstances in which the putative intervenor seeks to become involved in an action in order, to litigate a legal claim or defense on the merits. Intervenors such as Grier, however, do not seem to fit within these parameters. Grier does not seek to resolve an issue on the merits that is in common with the claims of parties to the main action, but simply wants access to materials gathered or prepared by the original parties in the course of their litigation. Nonetheless, despite the lack of a clear fit with the literal terms of Rule 24(b), every circuit court that has considered the question has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders. *See Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 783 (1st Cir.1988); *Martindell v. International Telephone and Telegraph Corp.*, 594 F.2d 291, 294 (2nd Cir.1979); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3rd Cir.1994); *In re Beef Industry Antitrust Litigation*, 589 F.2d 786, 789 (5th Cir.1979); *Meyer Goldberg, Inc. v. Fisher Foods, Inc.*, 823 F.2d 159, 162 (6th Cir.1987); *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 896 (7th Cir.1994); *Beckman Industries, Inc. v. International Insurance Co.*, 966 F.2d 470, 473 (9th Cir. 1992); *United Nuclear Corp. v. Cranford Insurance Co.*, 905 F.2d 1424, 1427 (10th Cir.1990). Several courts have interpreted the "claim or defense" language to apply to suits brought in other jurisdictions, *see, e.g., United Nuclear Corp.*, 905 F.2d at 1427; *Meyer Goldberg, Inc.*, 823 F.2d at 162, while other courts have allowed outsiders such as newspapers to intervene, even though they did not seek the information for use in other litigation, *see, e.g., Pansy*, 23 F.3d at 777–78; *Grove Fresh Distributors*, 24 F.3d at 895–96. Although a strict reading of the rule might suggest a contrary result, courts have been willing to adopt generous interpretations of Rule 24(b) because of the need for "an effective mechanism for third-party claims of access to information generated through judicial proceedings." *Public Citizen*, 858 F.2d at 783.

In our prior cases, we have expressed a willingness to adopt flexible interpretations

of Rule 24 in special circumstances. *See Textile Workers Union of America, CIO v. Allendale Co.,* 226 F.2d 765, 767 (D.C.Cir. 1955) (en banc) ("Obviously tailored to fit ordinary civil litigation, these provisions require other than literal application in atypical cases."); *see also id.* at 768 ("[F]ailure to come within the precise bounds of Rule 24's provisions does not necessarily bar intervention if there is a sound reason to allow it."). In particular, we have eschewed strict readings of the phrase "claim or defense," allowing intervention even in "situations where the existence of any nominate 'claim' or 'defense' is difficult to find." *Nuesse v. Camp,* 385 F.2d 694, 704 (D.C.Cir.1967) (citation and internal quotation marks omitted). The force of precedent therefore compels a flexible reading of Rule 24(b). Given this flexible approach and our longstanding "tradition of public access to court records," *In re Reporters Comm. for Freedom of the Press,* 773 F.2d 1325, 1333 (D.C.Cir.1985), we construe Rule 24(b) as an avenue for third parties "to have their day in court to contest the scope or need for confidentiality." *Pansy,* 23 F.3d at 780. Accordingly, we hold that third parties may be allowed to permissively intervene under Rule 24(b) for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order.

### B.

■ We turn next to the question of whether the district court erred when it denied Grier's motion for permissive intervention. As its name would suggest, permissive intervention is an inherently discretionary enterprise. *Hodgson v. United Mine Workers of America,* 473 F.2d 118, 125 n. 36 (D.C.Cir.1972). Rule 24(b) provides that anyone "may" be permitted to intervene if the requirements of the rule are satisfied, and makes reference to the fact that a court must "exercis[e] its discretion" when deciding whether to allow intervention. *Cf.* Fed. R.Civ.P. 24(a) (providing that anyone "shall" be permitted to intervene in two specific circumstances). In keeping with the wide latitude afforded to district courts under the rule, we review the denial of a motion for permissive intervention under the abuse of discretion standard. *Twelve John Does v. District of Columbia,* 117 F.3d 571, 575 (D.C.Cir.1997).

■ In order to litigate a claim on the merits under Rule 24(b)(2), the putative intervenor must ordinarily present: (1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action. *Beckman,* 966 F.2d at 473. Because the district court denied Grier's motion to intervene, without a recorded rationale, we do not know whether the court concluded that Grier had failed to satisfy one or more of the requirements, or whether the court had some other reason for denying her motion. Whatever the district court's rationale, we conclude that the denial of Grier's motion to intervene without further explanation constituted an abuse of discretion.

The first requirement for permissive intervention—an independent basis for jurisdiction—stems not from any explicit language in Rule 24(b), but rather from the basic principle that a court may not adjudicate claims over which it lacks subject matter jurisdiction. *See* Fed.R.Civ.P. 82 ("These rules shall not be construed to extend or limit the jurisdiction of the United States district courts...."). Prior to the enactment of the current statute governing supplemental jurisdiction, 28 U.S.C. § 1367, courts granted intervention as of right without requiring an independent jurisdictional basis, on the theory that such claims were within the ancillary jurisdiction of the district courts. *See Turner/Ozanne v. Hyman/Power,* 111 F.3d 1312, 1319 (7th Cir.1997). Permissive intervention, in contrast, has always required an independent basis for jurisdiction. *See* 7C CHARLES ALAN WRIGHT *et al.,* FEDERAL PRACTICE AND PROCEDURE § 1917, at 464–70 (2nd ed.1986); 6 MOORE'S FEDERAL PRACTICE § 24.22 (3rd ed.1998). Requiring an independent basis for jurisdiction makes sense in cases involving permissive intervention, because the typical movant asks the district court to adjudicate an additional claim on the merits. No less than the original claimants, a third party who seeks to intervene in a federal action

and litigate a claim on the merits must demonstrate that the claim falls within the court's limited jurisdiction.

Notwithstanding the general requirement of an independent jurisdictional basis, courts have crafted a narrow exception when the third party seeks to intervene for the limited purpose of obtaining access to documents protected by a confidentiality order. *See Beckman,* 966 F.2d at 473; *Pansy,* 23 F.3d at 778 n. 3. The rationale for this exception is simple—such intervenors do not ask the district court to exercise jurisdiction over an additional claim on the merits, but rather to exercise a power that it already has, namely the power to modify a previously entered confidentiality order. *See In re "Agent Orange" Product Liability Litigation,* 821 F.2d 139, 145 (2nd Cir.1987) ("It is undisputed that a district court retains the power to modify or lift protective orders that it has entered."); *see also* 8 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2044.1, at 574–77 (2nd ed.1994). An independent jurisdictional basis is simply unnecessary when the movant seeks to intervene only for the limited purpose of obtaining access to documents covered by seal or by a protective order, because the third party does not ask the court to rule on the merits of a claim or defense. Because Grier does not seek intervention to litigate a substantive claim, but rather to challenge the entry of an order of confidentiality, the general requirement of an independent jurisdictional basis would not prevent the district court from granting her motion to intervene.

The second prerequisite under Rule 24(b)(2) is a timely motion. Grier filed her motion to intervene on July 21, 1997, almost two years after the original parties had settled the case. Despite this considerable lapse in time, NCC concedes that Grier's motion was timely, and we see no reason to reject this concession. We simply note that there is a "growing consensus among the courts of appeals that intervention to challenge confidentiality orders may take place long after a case has been terminated." *Pansy,* 23 F.3d at 779; *see also United Nuclear Corp.,* 905 F.2d at 1427 (allowing intervention three years after the case had been

settled because intervention "was for the sole purpose of challenging a protective order"). As the Tenth Circuit explained, "Rule 24(b)'s timeliness requirement is to prevent prejudice in the adjudication of the rights of the existing parties, a concern not present when the existing parties have settled their dispute and intervention is for a collateral purpose." *United Nuclear Corp.,* 905 F.2d at 1427.

The third requirement for permissive intervention under Rule 24(b)(2) is a claim or defense that shares a common question of law or fact with the main action. As we stated above, other courts have afforded this requirement considerable breadth when the movant seeks to intervene for the collateral purpose of challenging a confidentiality order. Several courts have held that the movant can satisfy the requirement by raising a common question in a suit in another jurisdiction. *See United Nuclear Corp.,* 905 F.2d at 1427; *Meyer Goldberg, Inc.,* 823 F.2d at 162. Other courts have gone so far as to hold that the issue of the scope or need for the confidentiality order itself presents a common question that links the movant's challenge with the main action. *See Pansy,* 23 F.3d at 777–78.

We need not conclude, as the Third Circuit appears to have done in *Pansy,* that the commonality requirement is satisfied whenever a third party objects to a confidentiality order, because Grier's suit in the Superior Court plainly shares common questions with the main action in *NCC.* The actions brought by the EEOC and Grier have a number of factual similarities: both suits were brought against NCC, based on acts of sexual misconduct, that were allegedly committed by NCC employees (two of the alleged perpetrators, it turns out, were brothers), in the transportation department, during roughly the same period of time. Grier's action is likely to raise questions about the operation of the Center that were also raised in the EEOC action, including whether there is a pattern of sexual misconduct at the Center, whether NCC knew or should have known about the alleged malfeasance of its employees, whether NCC employees received adequate training and supervision, whether NCC took

sufficient steps to prevent such incidents, and so on. Indeed, in a motion to seal the record filed with the district court, NCC came close to conceding not only that there may be common questions, but also that the record material in *NCC* might shed light on the substance of Grier's suit: the Center specifically asked the court to "seal those pleadings which are part of the record which make reference to rape, sexual activities and sexually offensive conduct...." Defendant National Children's Center, Inc.'s Supplement to its Motion to Seal the Record, *EEOC v. NCC*, No. 94–0642, at Docket No. 153.

The Center, quite tellingly we believe, does not deny that some of the material covered by the confidentiality order might be useful to Grier in her action in Superior Court. Instead, the Center draws attention to the legal and factual differences between the two cases. It reminds us, for example, that the action brought by the EEOC dealt with the sexual harassment of NCC employees, whereas Grier's suit in Superior Court involves an alleged assault of a student/client of NCC. We think, however, that the Center misses the message of the case law that it repeatedly cites in its brief, which is that "no particularly strong nexus of fact or law need exist between the two suits" when a nonparty seeks to intervene for the sole purpose of gaining access to documents subject to a confidentiality order. *United Nuclear Corp.*, 905 F.2d at 1427; *see also Beckman*, 966 F.2d at 474; *Meyer Goldberg, Inc.*, 823 F.2d at 164; *Pansy*, 23 F.3d at 778. Indeed, courts have explicitly held that "specificity, *e.g.*, that the claim involve ... the same legal theory [as the main action], is not required when intervenors are not becoming parties to the litigation." *Beckman*, 966 F.2d at 474.

In sum, Grier plainly satisfied all three of the requirements for permissive intervention under Rule 24(b)(2). We do not know the basis for the district court's denial of her motion, but if it was premised upon the misapprehension that Grier had failed to satisfy one of the requirements in the rule, that decision would warrant reversal even under the deferential abuse of discretion standard.

## C.

▇▇▇ Our conclusion that Grier satisfied all of the requirements of Rule 24(b)(2) does not compel the holding that the district court committed reversible error in denying her motion to intervene. Rule 24(b) vests district courts with considerable discretion, providing that the court "may" allow intervention if the requirements of the rule are met. Fed.R.Civ.P. 24(b). District courts have the discretion, in other words, to deny a motion for permissive intervention even if the movant established an independent jurisdictional basis, submitted a timely motion, and advanced a claim or defense that shares a common question with the main action. A district court's exercise of this discretion, however, is not free from review. As we stated above, the denial of a motion to intervene will be reversed if the district court committed an abuse of discretion. *Twelve John Does*, 117 F.3d at 575.

Reversal of a district court's denial of permissive intervention is a "very rare bird indeed." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2nd Cir.1994). Nonetheless, on the present record we cannot uphold this denial. Grier's request for permissive intervention followed the court's consideration of a motion for intervention filed by the three individuals who had filed a sexual harassment case against the Center. Like Grier, the three movants sought to intervene "for the limited purpose of obtaining access to the documents under seal and subject to protective order in this case." The district court granted their motion to intervene, noting that the "motion was timely" and that "[i]ntervention is the proper vehicle by which third parties should seek to alter protective orders and obtain access to sealed documents even after a case is over." The court went on to hold that the three intervenors should have access to the materials, subject to a protective order that prohibited their public dissemination. Given the district court's decision to grant the motion filed by those three movants, the unexplained denial of Grier's motion to intervene does not withstand scrutiny. The lower court was presented with two different motions to intervene in *NCC*, and in both instances the movants

sought intervention for the collateral purpose of obtaining access to materials covered by the court's confidentiality order. In both cases, the putative intervenors sought the materials for use in litigation against the Center, and in both cases the underlying litigation involved allegations of sexual misconduct by NCC's employees. The district court granted the first motion, but denied the second without offering an explanation for the disparate treatment. Perhaps the district court found enough difference in the motions to support this difference in result, but it did not provide us with a sufficient record to support that exercise of its discretion. We therefore conclude that we must vacate the court's decision denying without explanation Grier's motion for permissive intervention.

### III.

We vacate and remand the district court's order denying Grier's motion for permissive intervention under Rule 24(b)(2) for the limited purpose of obtaining access to the materials covered by the court's confidentiality order. We remand the case to the district court for further proceedings consistent with this opinion.