In re LINERBOARD ANTITRUST LITIGATION

This Document Relates To: All Actions (Civil Action Numbers 98–5055 and 99–1341)

No. MDL NO. 1261.
Nos. Civ.A.98–5055, Civ.A.99–1341.

United States District Court, E.D. Pennsylvania.

Aug. 25, 2004.

Allen D. Black, Roberta D. Liebenberg, Fine, Kaplan & Black, H. Laddie Montague, Jr., John R. Taylor, Berger & Montague PC, Howard Langer, Langer & Grogan P.C., Philadelphia, PA, Joseph Bruckner, Lockridge, Grindal, Nauden, Holstein, PLLP, Minneapolis, MN, Robert J. Larocca, Kohn Swift & Graf, P.C., Philadelphia, PA, Anthony J. Bolognese, Bolognese & Associates, LLC, Philadelphia, PA, Carol V. Gilden, Much Shelist Freed Denenberg Ament & Rubenstein, Michael Jerry Freed, Chicago, IL, Howard Langer, Langer & Grogan P.C., Robert J. Larocca, Kohn Swift & Graf, P.C., Philadelphia, PA, Steven A. Kanner, Much Shelist Freed Denenberg & Ament, P.C., Chicago, IL, for Plaintiffs.

Andrew G. Klevorn, Kathleen M. Mulligan, Nathan P. Eimer, Sidley & Austin, Chica Affirmed, Vacated and Remandedgo, IL, Barbara W. Mather, Pepper Hamilton LLP, Philadelphia, PA, Eric F. Gladbach, John P. Hooper, New York City, R. Mark Mc Careins, Winston & Strawn, Chicago, IL, Ralph G. Wellington, Scott L. Fast, Sherry A. Swirsky, Schnader Harrison Segal and Lewis L.L.P., Paul H. Saint-Antoine Drinker, Biddle & Reath LLP, Philadelphia, PA, Daniel B. Huyett, Stevens & Lee, Reading, PA, Daniel W. Smith, Norman M. Hirsch, Jenner & Block, Robert F. Huff, Jr., Kirkland & Ellis, Bruce Michael Zessar, Sidley & Austin, Chicago, IL, for Defendants.

Douglas J. Kurtenbach, Kirkland & Ellis, Chicago, IL, for Defendant/Respondent.

John G. Harkins, Jr., Harkins Cunningham, Philadelphia, PA, Ram Padmanabhan, Kirkland & Ellis, Chicago, IL, Scott L. Fast, Sherry A. Swirsky, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for Respondents.

James J. Rodgers, Dilworth Paxson L.L.P., Joseph M. Donley, Kittredge, Donley, Elson, Fullem & Embick, George Bochetto, Bochetto & Lentz PC, Warren Rubin, Law Offices of B.M.Gross PC, Philadelphia, PA, for Movants.

William J. Blechman, Kenny, Nachwalter, Seymour, Arnold, Critchlow and Spector, Miami, FL, for Respondents/Movants.

### ORDER AND MEMORANDUM

DUBOIS, District Judge.

### ORDER

**AND NOW**, this 24th day of August, 2004, upon consideration of the Motion of

La Cie McCormick Canada Co. to Intervene for the Limited Purpose of Seeking Modification to Confidentiality Order (Docket No. 409, filed July 9, 2004), Defendants' Response to the Motion of La Cie McCormick Canada Co. to Intervene for the Limited Purpose of Seeking Modification to Confidentiality Order (Docket No. 428, filed July 26, 2004) and Reply Memorandum in Support of Motion of La Cie McCormick Canada Co. to Intervene for the Limited Purpose of Seeking Modification to Confidentiality Order (Docket No. 460, filed August 4, 2004), **IT IS ORDERED** that the Motion of La Cie McCormick Canada Co. to Intervene for the Limited Purpose of Seeking Modification to Confidentiality Order is **GRANTED.**

**IT IS FURTHER ORDERED** as follows:

1. Intervenor McCormick's counsel shall be granted access (at his own expense) by the parties in this action to all discovery in this action including, but not limited to, defendants' documents, interrogatory responses and responses to requests for admission, and deposition transcripts; and

2. The Court's Order of December 14, 2000 is amended to add a new paragraph, paragraph 13, as follows:

Plaintiff in *La Cie McCormick Canada Co. v. Stone Container Corp., et al.,* Sup.Ct. Justice File No. 43669 (Ontario, Canada) shall be deemed a 'Party hereunder for the purpose of obtaining access to discovery materials.' The Plaintiff in *McCormick* shall be permitted to use such discovery materials in its action in any manner permitted by the court in which that case is pending, and its counsel shall be deemed 'counsel of record' for all purposes under this Confidentiality Order. For the purpose of this Paragraph, the persons and entities listed in

Paragraph 3 in this Order shall be deemed to include all of their respective counterparts in the *McCormick* action. The plaintiff in *McCormick* is bound by the terms of the Order not to use such materials for any purpose other than for the prosecution of its own litigation, and is bound to abide by the non-disclosure provisions of this Order except as modified in this Paragraph."

3. This Court's Order of December 14, 2000 remains in effect subject to this amendment.

## *MEMORANDUM*

### I. *INTRODUCTION*

Presently before the court is the Motion of La Cie McCormick Canada Co. to Intervene for the Limited Purpose of Seeking Modification to Confidentiality Order and related filings. For the reasons that follow, the Motion to Intervene is granted and the Court's Confidentiality Order of December 14, 2000 is amended to permit La Cie McCormick to access discovery materials in this case pursuant to the Confidentiality Order.

### II. *FACTUAL AND PROCEDURAL HISTORY*

The Court sets forth only an abbreviated factual and procedural history as pertinent to Defendants' Motion for Expedited Discovery and Defendants' Motion Under Rule 60 to Correct Mistake. The factual background of the case is described at length in this Court's Memorandum dated October 4, 2000 denying defendants' Motion to Dismiss, its Memorandum dated September 4, 2001 certifying classes of direct purchasers of corrugated boxes and corrugated sheets, the Opinion of the Court of Appeals for the Third Circuit affirming the September 4, 2001 Memorandum and Order, this Court's Memorandum

dated August 26, 2003 approving the final settlement between plaintiffs classes and two of the defendants, Temple–Inland, Inc. and Gaylord Container Corporation and this Court's Memorandum dated June 2, 2004 awarding class counsel attorneys fees. *See In re Linerboard Antitrust Litig.*, MDL No. 1261, 2000 WL 1475559, at *1–3 (E.D.Pa. Oct. 4, 2000) (*"Linerboard I"*); *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 201–04 (E.D.Pa.2001) (*"Linerboard II"*); *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 147–49 (3d Cir.2002) (*"Linerboard III"*); *In re Linerboard Antitrust Litig.*, 296 F.Supp.2d 568, 573–575 (E.D.Pa.2003) (*"Linerboard IV"*); *In re Linerboard Antitrust Litig.*, 2004 WL 1221350, *1–3 (E.D.Pa. June 2, 2004) (*"Linerboard V"*).

This is an antitrust action involving allegations that a number of U.S. manufacturers of linerboard[1] engaged in a combination and conspiracy in unreasonable restraint of trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

### A. *The Class Case*

Class plaintiffs named the following defendants in their Complaints and Amended Complaints—Stone Container Corporation, Jefferson Smurfit Corporation, Smurfit–Stone Container Corp., International Paper Company, Georgia–Pacific Corporation, Temple–Inland, Inc., Gaylord Container Corporation, Tenneco, Inc., Tenneco Packaging, Inc., Union Camp Corporation, Packing Corporation of American and Weyerhaeuser Paper Company—and alleged that they conspired to raise the price of corrugated containers and corrugated sheets throughout the United States by restricting production and/or curtailing inventories in violation of federal antitrust laws.

By Memorandum and Order dated September 4, 2001, this Court certified the following two plaintiff classes: a "sheet class" consisting of buyers of corrugated sheets and a "box class" consisting of purchasers of corrugated containers. *Linerboard II*, 203 F.R.D. at 224. The Court's certification rulings were affirmed by the Third Circuit and the Supreme Court denied certiorari. *See Gaylord Container Corp. v. Garrett Paper, Inc.*, 538 U.S. 977, 123 S.Ct. 1786, 155 L.Ed.2d 666 (2003). As of April 2004, as a result of four settlements between the classes and various groups of defendants, all claims in the class case were resolved for a total of $202,572,489.[2]

1. Linerboard includes any grade of paperboard suitable for use in the production of corrugated sheets, which are in turn used in the manufacture of corrugated boxes and for a variety of industrial and commercial applications. Corrugated sheets are made by gluing a fluted sheet which is not made of linerboard, known as the corrugating medium, between facing sheets of linerboard; corrugated sheets are also referred to as containerboard. The defendants named in the instant lawsuits are major integrated manufacturers and sellers of linerboard, corrugated sheets and corrugated boxes.

2. By Order dated August 26, 2003, this Court approved a partial settlement in the amount of $8 million between plaintiff classes and Temple–Inland, Inc. and Gaylord Container Corp. The $8 million settlement was reduced to $7.2 million in accordance with the terms of the settlement agreement based on the number of parties that subsequently opted-out of the classes. This first partial settlement was described by petitioners as an ice-breaker—a settlement that would lead to further settlements.

Within a month of Court approval of the ice-breaker settlement, on September 22, 2003, the plaintiff classes and defendants International Paper Company and Union Camp Corporation, Georgia Pacific Corporation, and Weyerhauser Company announced they had reached a settlement agreement in the total amount of $68 million (the "International Paper Settlement"). The Court granted

## B. *The Direct Actions*

One-hundred and forty entities opted out of the classes certified by the Court by filing Requests for Exclusion on or before June 9, 2003.[3] These 140 entities opted-out not only themselves but also approximately 3400 subsidiary and affiliate companies. A detailed description of the notice to classes and the procedural history involving the opt-outs from the classes is provided in this Court's Memorandum of September 5, 2003. Of the 140 Requests for Exclusion, 13 groups of opt-outs subsequently filed tag-along actions against defendants. As of the date of this memorandum, 11 of those groups have outstanding claims against one or more of the defendants.[4]

## C. *Motion of La Cie McCormick Canada Co. to Intervene*

On July 7, 2004, La Cie McCormick Canada Co. ("McCormick" or "movant"),

---

final approval of that settlement on December 8, 2003.

Prior to that date, in October and November 2003, the parties announced the additional partial settlements with defendants Packaging Corporation of America, Tenneco, Inc., and Tenneco Packaging, Inc. (The "PCA Settlement") in the amount of $43 million and with defendants Stone Container Corporation, Jefferson Smurfit Corporation, and Smurfit Stone Container Corporation (the "Stone Settlement") in the amount of $92.5 million. As a result of a "most favored nation's clause" in the PCA Settlement, the terms of the Stone Settlement triggered a reduction in the amount owed by PCA from $43 million to $34 million. The Court granted final approval of both the PCA Settlement and the Stone Settlement in a Memorandum and Order dated March 21, 2004. With the Court's approval of these last two partial settlements, all claims in the class action were resolved for a total of $202,572,489.

3. A copy of the Record of Potential Class Members Who Excluded Themselves from the Classes is appended to this Court's Memorandum and Order dated December 8, 2003 approving the Settlement Agreement between Temple–Inland, Inc. and Gaylord Container Corporation; this Court's Memorandum and Order dated December 8, 2003, granting Class Plaintiffs' Motion for Final Approval of Settlement Agreement Between the Class and International Paper Company and Union Camp Corporation, Georgia–Pacific Corporation, and Weyerhauser Company; and this Court's Memorandum and Order dated April 21, 2004 granting Class Plaintiffs' Motion for Final Approval of the Settlements with Defendants Packaging Corporation of America, Inc., Tenneco, Inc. And Tenneco Packaging Inc. and with Defendants Stone Container Corporation, Jefferson Smurfit Corporation, and Smurfit Stone Container Corporation.

4. The following are the direct actions that are proceeding:

1. *Perdue Farms Incorporated v. Stone Container Corporation, et al.*, No. 03–1702 (D. Md. filed June 9, 2003);

2. *Sara Lee Corporation, et al. v. Smurfit Stone Container Corporation, et al.*, No. 03–3939 (N.D. Ill. filed June 10, 2003);

3. *Procter & Gamble Company, et al. v. Stone Container Corporation, et al.*, No. 03–3944 (N.D. Ill. filed June 10, 2003);

4. *United States Gypsum Company, et al. v. Stone Container Corporation, et al.*, No. 03–4251 (N.D. Ill. filed June 10, 2003);

5. *Smithfield Foods, Inc., et al. v. Smurfit Stone Container Corporation, et al.*, No. 03–3968 (N.D. Ill. filed June 11, 2003);

6. *Hormel Foods Corporation, et al. v. Stone Container Corporation, et al.*, No. 03–3421 (D. Minn. filed June 13, 2003);

7. *Milne Fruit Products, Inc., et al. v. Stone Container Corporation, et al.*, No. 03–4049 (N.D. Ill. filed June 13, 2003);

8. *Kellogg Company, et al. v. Smurfit Stone Container Corporation, et al.*, No. 03–4213 (N.D. Ill. filed June 19, 2003)

9. *Farmland National Beef Packing Co. v. Stone Container Corporation, et al.*, No. 03–1312 (D. of Kansas filed August 29, 2003);

10. *Mars Inc., et al. v. Stone Container Corporation, et al.*, No. 03–6977 (N.D. of Ill. filed October 1, 2003); and

11. *Conopco, Inc., et al. v. Smurfit Stone Container Corporation, as successor to Stone Container Corporation, et al.*, No. 03–3549 (E.D. Pa. filed June 9, 2003).

moved to intervene in MDL 1261 for the limited purpose of seeking modification of the Confidentiality Order entered by the Court on December 14, 2000. Movant is the plaintiff in *La Cie McCormick Canada Co. v. Stone Container Corp.*, et al., File No. 43669, a class action lawsuit pending in the Superior Court of Justice, Ontario, Canada. McCormick's Mem. of Points and Auth. 1, Ex. A Declaration of Andrew De-Kay. Movant asserts that its suit is similar to the instant matter with the exception that its suit is brought on behalf of linerboard purchasers, both direct and indirect, who are located in Canada. *Id.* Movant seeks access to discovery plaintiffs have collected in MDL 1261 that is the subject to the Court's December 14, 2000 Confidentiality Order.

That Order provides that parties may designate as "Confidential" any material it produces in this litigation which contains "trade secrets or other confidential research, development or commercial information, including cost information and planning information ("Confidential Material") for which a good faith claim of need of protection from disclosure can be made." Order of Dec. 14, 2000 ¶ 2. Confidential Material may be provided only to counsel of record for the parties and, absent consent from the producing party or unless otherwise directed by the Court, may be disclosed by such counsel only to the following persons:

(i) attorneys appearing in and/or working on this Litigation, including regular and temporary employees, contracts and agents;

(ii) outside experts or consultants retained to assist in the preparation of this case by any attorney described in subparagraph (I) above, as well as employees of such expert or consultant;

(iii) outside photocopying, graphic production services or litigation support services employed by the parties or their counsel to assist in this Litigation, and computer service personnel performing duties in relation to a computerized litigation system;

(iv) potential witnesses to the extent that they received the Confidential Material, or otherwise had access to the confidential information contained in them, in the ordinary course of business;

(v) the Court, witnesses (including deponents), court reporters, stenographers, court personnel, jurors and alternate jurors, if any;

(vi) other persons to whom the Court specifically allows disclosure, after application by the party seeking such disclosure and an opportunity to reply by the producing Party or Parties.

Order of Dec. 14, 2000 ¶ 3.

## III. *STANDARDS FOR PERMISSIVE INTERVENTION*

Federal Rule of Civil Procedure 24(b) provides, that "[u]pon timely intervention anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common." Such a grant of so-called "permissive intervention" is a matter of discretion for a the trial court. *Harris v. Pernsley*, 820 F.2d 592, 597 (3d Cir.1987). The Third Circuit has ruled that "the procedural device of permissive intervention is appropriately used to enable a litigant who was not an original party to an action to challenge protective or confidentiality orders entered in that action." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3d Cir. 1994) (citations omitted).

The requirements for permissive intervention are: (1) an independent basis of subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with

the main action. *Equal Employment Opportunity Comm'n v. Nat'l Children's Ctr., Inc.,* 146 F.3d 1042, 1046 (D.C.Cir.1998) (*"EEOC"*); *see also Beckman Indus.· v. International Ins. Co.,* 966 F.2d 470, 473 (9th Cir.1992) *cert denied* 506 U.S. 868, 113 S.Ct. 197, 121 L.Ed.2d 140.·

These requirements have been interpreted flexibly when a non-party seeks intervention for the limited purpose of modifying a protective order. First, the intervener need not demonstrate an independent basis of subject matter jurisdiction. *Pansy,* 23 F.3d at 778, n. 3. This is because "such intervenors do not ask the district court to exercise jurisdiction over an additional claim on the merits, but rather to exercise a power that it already has, namely the power to modify a previously entered confidentiality order." *EEOC,* 146 F.3d at 1047; *In re Agent Orange Prod. Liab. Litig.,* 821 F.2d 139, 145 (2d Cir. 1987).

Second, the requirement that a claim or defense present "common· legal or factual issues" to the main action is interpreted with "considerable breadth." *EEOC,* 146 F.2d at 1046; *Pansy,* 23 F.3d at 778. Courts have regularly held this requirement satisfied if the movant raises a common question in a suit in another jurisdiction. *EEOC,* 146 F.2d at 1047; *Meyer Goldberg, Inc. v. Fisher Foods, Inc.,* 823 F.2d 159, 162 (6th Cir.1987); *Kerasotes Michigan Theatres v. National Amusements,* 139 F.R.D. 102, 103–4 (E.D.Mich. 1991).

Third, the requirement of a "timely" motion has also been interpreted broadly in the context of modifying protective orders. · In *Pansy,* the Third Circuit noted a "growing consensus among the courts of appeals that intervention to challenge confidentiality orders may take place long after a case has been terminated." 23 F.3d at 779 (citing *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.,* 998 F.2d 157 (3d Cir.1993)).

In sum, "courts have been willing to adopt · generous interpretations of Rule 24(b)" to facilitate an "effective mechanism for third-party claims of access to information generated through judicial proceedings." *EEOC,* 146 F.3d at 1045.

## IV. *DISCUSSION*

■ Movant McCormick meets the requirements for permissive intervention. First, movant asserts jurisdiction based on this Court's authority to modify a previously-entered protective order, this Court's Confidentiality Order of December 14, 2000. Second, movant's request is timely, filed less than 6 months after the settlement of this action and commencement of movant's collateral litigation in Canada. Third, movant meets the requirement that the collateral case present common facts or legal issues to those presented in this case.

In addition to these elements, the Motion to Intervene satisfies a number of other requirements that courts have imposed on parties seeking to modify a confidentiality order to share discovery. First, before allowing discovery to be shared the Seventh Circuit in *Wilk v. American Medical. Ass'n,* 635 F.2d 1295, 1300 (7th Cir. 1980), ruled that the court must first determine whether the collateral litigation is *bona fide.* Here there is no question that movant is a *bona fide* litigant.

Second, in cases in which the public or the press have sought access to discovery materials for their own uses, the party that seeks to protect materials from disclosure has borne the burden of demonstrating prejudice. Upon such a showing, courts have then balanced the interests of disclosure and secrecy, mindful of the principle that "the general public must be afforded

access to discovery material whenever possible." *Agent Orange,* 821 F.2d at 146. Where collateral litigants are concerned, however, the court need not balance prejudice against secrecy because secrecy can be preserved by subjecting the intervenor to the provisions of a protective order. *Kerasotes,* 139 F.R.D. at 106; *Meyer Goldberg,* 823 F.2d at 163. When this is the case access should be granted "even if the need for the protected materials is minimal." *Id.* This is the procedure that movant proposes in the instant case. Specifically, movant has, in its filings in this Court, expressly submitted to the personal jurisdiction of this Court for the purpose of enforcement of the Confidentiality Order. McCormick's Mem. of Points and Auth. 9.

█ Defendants argue that the relief movant seeks under Rule 24(b) is improper and argue that McCormick should have invoked 28 U.S.C. § 1782. Def.'s Opp. 4. Section 1782 provides:

The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).

Defendants also argue that McCormick moved under Rule 24(b) rather than § 1782 so as to avoid an inquiry under § 1782(a) into foreign proof-gathering restrictions or other policies of foreign tribunals limiting discovery. *Intel Corp. v. Advanced Micro Devices, Inc.,* —— U.S. ——, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004). Specifically, defendants assert movant is attempting to "circumvent the proof-gathering restrictions or other policies" of Canada in two respects. First, defendants argue that under Ontario Rules of Civil Procedure, plaintiffs are not entitled to discovery until after class certification has been decided and point to the fact that the class certification hearing on movant's case is not yet scheduled but is not expected to occur until 2005. Second, defendants argue that movant would not be entitled under Ontario Rules of Civil Procedure to all the discovery that plaintiffs in this case have received.

Defendants cite no authority for the proposition that a litigant before a foreign tribunal may not invoke Rule 24(b) to access discovery materials in the United States. Moreover, § 1782(b) specifically provides:

This chapter does not preclude a person within the United States from voluntarily giving his testimony or statement, or producing a document or other thing, for use in a proceeding in a foreign or international tribunal before any person and in any manner acceptable to him.

28 U.S.C. § 1782(b). That is precisely what movant seeks—the voluntary production by plaintiffs, not defendants, of the discovery documents and deposition transcripts in their possession. Only the Court's confidentiality order prevents plaintiffs from providing movant with these materials.

As for defendants' argument that moving under Rule 24(b) is a "novel" or "unconventional" approach under the circumstances, the Court notes that Canadian plaintiffs have sought similar relief under Rule 24(b) in both the *Vitamins Antitrust Litigation* in the United States District Court for the District of Columbia and the *BAYCOL PRODUCTS LITIGATION* in the United States District Court for the District of Minnesota. *In re Vitamins Antitrust Litig.*, MDL No. 1285, 2001 WL 34088808, 2001 U.S. Dist. LEXIS 25068 (D.D.C. Mar. 19, 2001); *In re: BAYCOL PRODS. LITIG.*, MDL No. 1431, Pretrial Order No. 77 (D.Minn. May 6, 2003). In *Vitamins*, the District Court found the criteria for intervention had been met but deferred ruling on movants' request to modify the protective order pending the outcome of proceedings in Canada that could moot the need for the materials. 2001 WL 34088808 at *7, 2001 U.S. Dist. LEXIS 25068 at *45. In *BAYCOL*, the District Court allowed Canadian plaintiffs to intervene under Rule 24(b) and modified the protective order covering the litigation to allow the Canadian intervenors to access discovery. MDL No. 1431, Pretrial Order No. 77 (D.Minn. May 6, 2003). Thus, defendants assertions that Rule 24(b) is an improper vehicle for the relief movant seeks are rejected.

As to their argument regarding circumvention of Canadian law, McCormick does not dispute that the Ontario Rules of Civil Procedure do not permit a plaintiff to seek discovery from a defendant until after class certification. However, McCormick argues, citing a recent decision by the Ontario Superior Court in the Canadian vitamins antitrust litigation, *Vitapharm Canada Ltd. v. F. Hoffman–Laroche, Ltd.*, No. 99–GD–46719 (Ont.Sup.Cit. January 26, 2001), that its motion does not attempt to circumvent this rule. Although based on foreign law, the Court may consider this argument under Third Circuit precedent. *See In re Application of Bayer AG*, 146 F.3d 188, 195 (3d Cir.1998) ("[i]n determining whether the foreign tribunal would take offense, the district court would be free, in the exercise of its direction, to consider any materials, typically statutes or case law from the foreign jurisdiction, that may be presented by the parties"). In *Vitapharm*, the Canadian plaintiffs moved to intervene in the vitamins litigation in the United States for the purpose of seeking a modification of a protective order entered by the United States District Court for the District of Columbia. In the Canadian vitamins litigation, the defendants moved to enjoin the plaintiffs from seeking access to discovery in the American action. The Canadian lower court denied the injunction, stating:

> The plaintiffs are not seeking discovery in the U.S. through their U.S. Motion. Rather, they are only seeking access to the discovery of the litigants in the U.S. Litigation. From a legal standpoint, the U.S. Motion is only necessary because of the Protective Order.

> If there was no Protective Order and the plaintiffs were simply given access to discovery documents and depositions generated in the U.S. Litigation, the defendants could not take objection. It is only Judge Hogan [in the U.S. Vitamins antitrust litigation] who has jurisdiction to vary the terms of the Protective Order.

*Vitapharm* at 11. Recognizing that American courts have found that discovery under § 1782 should not be granted if such discovery will offend the foreign tribunal, the lower court stated:

> A Canadian court generally will be reluctant to prevent someone from gathering evidence extraterritorially, as its ultimate admissibility in a Canadian proceeding will be determined by the Canadian courts.

*Id.* at 13 (citations omitted). In conclusion, the lower court held that:

> The plaintiffs request for access to discovery evidence which they believe necessary to prepare their case in Canada, a request made through means lawful in the United States, does not violate the rules and procedure of this court. There is no consequential unfairness to the defendants in the Canadian class proceedings.

*Id.* at 14.

On appeal to the Ontario intermediate appellate court in *Vitapharm*, the principal issue was whether the lower court was correct in characterizing plaintiffs' efforts in the United States as seeking access to the fruits of discovery, rather than seeking to conduct discovery. Finding that the lower court was correct, the appellate court dismissed the appeal. *Vitapharm Canada Ltd. v. F. Hoffman–LaRoche Ltd.*, No. 82/2001 (Ont. Sup.Ct. (Division Court) April 10, 2002). One judge (Farley, J.) concurred, but would have held otherwise had it appeared that plaintiffs were intending to actively participate in discovery in the United States, as opposed to passively receiving discovery materials. Concurring Opinion at 9–10. No such issue is presented in this case since movant only seeks access to discovery already completed.

In addition, like the lower court in *Vitapharm*, this Court concludes defendants will suffer no prejudice from granting movant access to materials that have already been produced to plaintiffs in MDL 1261. *United Nuclear Corp.*, 905 F.2d at 1428 ("[d]efendants desire to make it more burdensome for intervenors to pursue their collateral litigation is not legitimate prejudice"); *Wilk*, 635 F.2d at 1301 (there is "no reason to erect gratuitous roadblocks in the path of a litigant who finds a trial blazed by another").

Finally, the Court notes that although McCormick has not moved pursuant to Section 1782, one of the goals of that legislation is to provide "efficient means of assistance to participants in international litigation in our federal courts and encourage foreign countries by example to provide similar means of assistance to our courts ..." *In the Matter of Application of Euromepa v. Esmerian, Inc.*, 51 F.3d 1095, 1097 (2d Cir.1995). The Court concludes that granting McCormick's motion promotes that end. As the Seventh Circuit explained in *Wilk:*

> access in such cases materially eases the tasks of courts and litigants and speeds up what may otherwise be a lengthy process. Particularly in litigation of this magnitude, we ... are impressed with the wastefulness of requiring the [collateral litigant] to duplicate discovery already made.

635 F.2d at 1299. Having managed the discovery process in the instant case, this Court is similarly "impressed with the wastefulness to all parties including defendants of requiring the [movant] to duplicate discovery already made."

## V. CONCLUSION

The Court concludes that Rule 24(b) is the appropriate vehicle for the relief movant seeks and that movant has satisfied the requirements for permissive intervention. The Court grants McCormick's Motion to Intervene and amends the Confi-

343

dentiality Order of December 14, 2000 as provided in the attached Order.