**KERASOTES MICHIGAN THEATRES, INC., Plaintiff,**

**v.**

**NATIONAL AMUSEMENTS, INC., Northeast Theatre Corporation, Michael Redstone and Sumner Redstone, Defendants.**

Civ. A. No. 85–CV–40448–FL.

United States District Court,
E.D. Michigan, S.D.,
Flint.

Sept. 12, 1991.

David A. Ettinger, Honigman, Miller, Schwartz and Cohen, Detroit, Mich., for plaintiff.

Eugene Driker, Elaine Fieldman, Barris, Sott, Denn & Driker, Detroit, Mich., James Hunter, Douglas A. Freedman, Latham & Watkins, Chicago, Ill., Robert J. Rotatori, Susan L. Gragel, Gold, Rotatori, Schwartz & Gibbons Co., L.P.A., Cleveland, Ohio, Tad Jankowski, National Amusements, Inc., Dedham, Mass., and Barry Ravech, Winer and Abrams, Boston, Mass., for defendants.

Robert C. Hackett, David W. Dow, Mohr, Hackett, Pederson, Blakley, Randolph & Haga, P.C., Phoenix, Ariz. and Thomas G. McNeil, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, Mich., for American Multi–Cinema, Inc.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Before the Court is a Motion to Intervene by American Multi–Cinema, Inc. ("AMC"), for the limited purpose of modifying any relevant protective orders. Defendant, National Amusements, Inc. ("National"), opposes AMC's intervention. Plaintiff, Kerasotes Michigan Theatres, Inc., takes no position with respect to this Motion. For the following reasons, the Motion is GRANTED.

■ This Motion arises out of similar antitrust litigation filed by AMC against National, MGM/UA Entertainment Co., and Orion Pictures Corp., which is pending in the United States District Court for the Northern District of Ohio, No. C 88–7104 ("the Toledo litigation"). AMC seeks access to deposition transcripts (and all exhibits thereto) generated in this long-settled case ("the Flint litigation") as a result of any of National's employees, motion picture distributors' employees or expert witnesses being deposed. To the extent that these specified transcripts are subject to any protective orders,[1] AMC seeks intervention for the limited purpose of modifying such protective orders to provide that, subject to the continuing terms of such protective orders, AMC shall be granted access to specified deposition transcripts generated in the Flint litigation.

■ In the Sixth Circuit, permissive intervention under Fed.R.Civ.P. 24(b) has been held to be a proper method for a nonparty to challenge a protective order by limited intervention for discovery purposes. *Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 162 (6th Cir.1987) (citing *In re Upjohn Co. Antibiotic Cleocin Products Liability Litigation*, 664 F.2d 114, 118 (6th Cir.1981)). Furthermore, when intervention for purposes of discovery is thus sought, and the two actions involve the same defendants charged with anti-competitive conduct, no stringent showing of a strong nexus of common fact or law is required. *Meyer Goldberg*, 823 F.2d at 164.

In *Meyer Goldberg*, May Department Stores Company ("May") moved to intervene in a settled antitrust action ("the Goldberg litigation") which involved same defendants and many of the same issues as a subsequent action initiated by May. May requested intervention in order to discover certain tape recordings from the Goldberg litigation in which conspiracy was allegedly discussed. These tape re-

---

1. A protective order was previously entered in this case restricting access to confidential information that was produced solely for use in this case.

cordings had been previously placed under protective order in the Goldberg litigation which had since been settled and dismissed with prejudice. The district court denied May's motion to intervene in the Goldberg litigation, holding that: "May Company has failed to show, as a threshold matter, that their [sic] claim and the main action 'have a question of law or fact in common.' Therefore, intervention in the above-captioned case is not warranted." *Id.* at 161.

May appealed from the district court's decision. The Sixth Circuit, in analyzing the requested modification, cited the following standard:

Given that proceedings should normally take place in public, imposing a good cause requirement on the party seeking modification of a protective order is unwarranted. *If access to protected fruits can be granted without harm to legitimate secrecy interests, or if no such interests exist, continued judicial protection cannot be justified. In that case, access should be granted even if the need for the protected materials is minimal.* When that is not the case, the court should require the party seeking modification to show why the secrecy interests deserve less protection than they did when the order was granted. Even then, however, the movant should not be saddled with a burden more onerous than explaining why his need for the materials outweighs existing privacy concerns.

*Id.* at 163 (citations omitted) (emphasis added).

The Court concluded that a strong nexus of common law and fact is not required where intervention is for the purpose of discovery, *Id.* at 164, and the Court remanded the case to the district court for lack of "consideration of the strong underlying tradition of open records, and that only compelling reasons justify denial or continued denial of access to records of the type sought by appellant May," *Id.* The *Meyer Goldberg* decision thus indicates that, in the balancing of the harm to legitimate secrecy interests in granting access to the protected material against the strong tradi-

tional public interest in open records, the presumption favors the latter.

The first question this Court must answer is whether access to the protected deposition transcripts can be granted without harm to existing legitimate secrecy interests. Therefore, to engage in the appropriate balance, we must determine what secrecy interests are at stake in this case.

The question of whether to grant access to protected material for discovery purposes in a collateral action is explored in depth by the Tenth Circuit in *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424 (10th Cir.1990). That Court provides us with the following instructive discussion:

The protective order in this case was entered by stipulation of the parties and designated all materials produced in discovery as confidential. The order restricted use and disclosure unless a party challenged the confidentiality of a particular item. These stipulated "blanket" protective orders are becoming standard practice in complex cases. They allow the parties to make full disclosure in discovery without fear of public access to sensitive information and without the expense and delay of protracted disputes over every item of sensitive information, thereby promoting the overriding goal of the Federal Rules of Civil Procedure, "to secure the just, speedy, and inexpensive determination of every action." Fed. R.Civ.P. 1.

No doubt such an order makes the discovery process in a particular case operate more efficiently; the assurance of confidentiality may encourage disclosures that otherwise would be resisted. Allowing modification of protective orders for the benefit of collateral litigants tends to undermine the order's potential for more efficient discovery. But when a collateral litigant seeks access to discovery produced under a protective order, there is a counter-veiling efficiency consideration—saving time and effort in the collateral case by avoiding duplicative discovery. In striking this balance, some circuits have adopted a presumption in favor of the continued integrity of

the protective order, *see, e.g., In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d 139, 147–48 (2d Cir.), *cert. denied*, 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987) (protective orders modifiable only under extraordinary circumstances),[2] others have tipped the balance in favor of avoiding duplicative discovery, *see, e.g., Wilk v. American Medical Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980); *Olympic Refining Co. v. Carter*, 332 F.2d 260, 264–66 (9th Cir.), *cert. denied*, 379 U.S. 900, 85 S.Ct. 186, 13 L.Ed.2d 175 (1964), and still others have simply left the balancing to the discretion of the trial court, *see, e.g., In re Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig.*, 664 F.2d 114, 120 (6th Cir.1981).

*United Nuclear Corp.*, at 1427–28 (some citations omitted). The Tenth Circuit adopted the standard of the Seventh Circuit in *Wilk:*

> [W]here an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification. Once such prejudice is demonstrated, however, the district court has broad discretion in judging whether that injury outweighs the benefits of any possible modification of the protective order.

*Id.* at 1428 (quoting *Wilk*, 635 F.2d at 1299 (citations omitted)). The Circuit Court held that the district court did not abuse its discretion in modifying the protective order and affirmed that any legitimate interest the defendants have in continued secrecy as against the public at large can be accommodated by placing intervenors under the original protective order. *Id.*

National opposes AMC's attempt to gain access to deposition transcripts under protective order in the Flint litigation primarily because AMC has not shown that it would derive any legitimate benefit from the information it seeks. That there are no common operative facts between the two actions proves that no legitimate interests would be advanced for discovery purposes. National asserts that the cases in this area demonstrate that if there are no common operative facts, there can be no benefit to the collateral litigant, and thus, confidentiality must be maintained.

This reasoning, however, is flawed by a misinterpretation of the standard developed by the case law. It is true that all the cases cited by both parties in support of their respective positions regarding this motion involve collateral litigation consisting of facts more similar to the main action than in the case before this Court. *See, e.g., Meyer Goldberg*, 823 F.2d 159 (both cases allege same conspiracy among supermarkets to fix prices in Cleveland, Ohio); *Wilk*, 635 F.2d 1295 (complaints both founded on virtually identical allegations of nationwide conspiracy); *Olympic*, 332 F.2d 260 (allegations of combination and conspiracy virtually identical); *Carter–Wallace, Inc. v. Hartz Mountain Industries, Inc.*, 92 F.R.D. 67, 70 (S.D.N.Y.1981) ("substantially similar allegations of [defendant's] monopoly power and anticompetitive activities ... in the market"); *In re Upjohn*, 81 F.R.D. 482 (E.D.Mich.1979), *aff'd.* 664 F.2d 114 (6th Cir.1981) (both cases arose from use of same drug). In *United Nuclear Corp.*, however, the Tenth Circuit stated that: "When a collateral litigant seeks permissive intervention solely to gain access to discovery subject to a protective order, no particularly strong nexus of fact or law need exist between the two suits." *Id.* at 1427 (citing *Meyer Goldberg* 823 F.2d at 164). Moreover, in *United Nuclear Corp.* the Tenth Circuit affirmed the district court's grant of intervention where the only common issue of fact was the interpretation of environmental impairment liability insurance policies in the main case and in several otherwise unrelated cases. *See Id.* at 1427.

---

**2.** This "extraordinary circumstances" standard has since proven to be an anomaly, "applied only when the government is the collateral litigant seeking to avoid duplicative discovery, because of the government's vast investigatorial [sic] resources and power for oppression." *United Nuclear Corp.*, 905 F.2d at 1428, fn. 1.

■ The standard evolving from these cases, and the one this Court must follow, is that expressed by the Sixth Circuit in *Meyer Goldberg.* We must first look to see if access to the protected material "can be granted without harm to legitimate secrecy interests." 823 F.2d at 163. If so, "access should be granted even if the need for the protected materials is minimal." *Id.*

As illustrated in *United Nuclear Corp.*, the interest in keeping the protected material secret is expediency in the discovery process with regard to future actions where the deposed witnesses will not be eager to respond freely without the guarantee that their testimony will be used solely for the trial at hand. But the goal of the federal rules to seek a "just, speedy and inexpensive determination of every action" is, ironically, also furthered by sharing discovery with collateral litigants. Fed.R.Civ.P. 1; *see Carter–Wallace*, 92 F.R.D. at 70. Furthermore, any secrecy interest will be preserved as AMC will only have access to the deposition transcripts *subject to the continuing provisions of the original protective order.* The protected material shall be disclosed only by the parties and solely for use in the Toledo litigation.[3]

Seeing that any secrecy interest in the protected material would be free from harm should this Court grant AMC access to the information, the second requirement of the *Meyer Goldberg* test is to determine whether the need for the protected material is at least minimal. While it is true that the information sought must have some legitimate and relevant use in the collateral litigation, the facts do not need to be identical for this Court to allow access to the protected material.

■ AMC seeks material to aid in their discovery process. Any information that is relevant or is calculated to lead to admissible evidence is discoverable. Fed.R.Civ.P. 26(b)(1). The information sought here—deposition transcripts of National's employees, motion picture distributors' employees, and expert witness—is, in this Court's opinion, calculated to lead to admissible or relevant evidence.[4] Some of the individuals deposed in the Flint litigation will be deposed by AMC in the Toledo litigation. The information in the deposition transcripts could lead to admissible evidence and will probably save significant time and expense in the Toledo discovery, and should facilitate the goal of the Federal Rules in pursuing justice. Evidently, National would like to determine for AMC that the information under protective order would not be helpful or relevant in any way to AMC's case. Given the similarity of the actions, however, this Court believes that the deposition testimony taken in the Flint litigation is discoverable for purposes of the Toledo litigation involving, as it does, the same defendant and several similar antitrust issues.

AMC's Motion to Intervene is GRANTED, and the protective order previously

---

3. Significantly, none of the protected material sought here is privileged. In any event, however, such privileged information would not be available to AMC with modification of the protective order, as it would not have been discoverable in the Flint litigation.

4. National alleges that AMC seeks this protected information not for any legitimate discovery purpose related to the Toledo litigation, but rather to harass National and certain non-party film distributors. National supports this allegation by pointing out AMC never even requested the production of the confidential information through the normal course of discovery.

This Court presumes, however, that such a request, if indeed not made in the Ohio forum, would be denied, just as it is in response to this motion. Furthermore, it is irrelevant whether the information has been otherwise requested in the Toledo litigation. The issue before this Court is whether the protective order granted in the Flint litigation should be modified to allow access to the protected materials for use in a collateral litigation. And as far as the request for access to such protected information is concerned, there is no persuasive evidence of improper motive. Quite to the contrary, the information sought is likely to lead to discoverable material and save time and expense in furtherance of Fed.R.Civ.P. 1.

Finally, it is not for this Court to determine whether the parties in the Toledo litigation are abusing their discovery privileges, rather it is for the Ohio Court to decide. This Court is not at liberty to observe the Toledo parties' discovery practices.

entered in this litigation shall be amended to allow AMC access to the confidential information, subject to the restrictions of the original order.

SO ORDERED.