In re BELL & BECKWITH, Debtor.

Bankruptcy No. 83–0132.

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

May 23, 1996.

Thomas J. Tucker, Toledo, OH, for Robert M. Fox, Jr.

Stephen P. Harbeck, Washington, DC, for SIPC.

David M. Schnorf, Toledo, OH, for Thomas McGhee.

Russell R. Miller, Toledo, OH, for Roscoe R. Betz.

Donald Henninger, Northwood, OH.

Mary Ann Whipple, Toledo, OH, for Trustee.

David W. Wicklund, Toledo, OH, for George Todd and the Late John Thompson.

Frank J.P. McManus, Toledo, OH, for Edward P. Wolfram, Jr.

H. Buswell Roberts, Jr., Toledo, OH, for Robert Coon and J. Robert Jesionowski.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This case comes before the Court after Hearing on the Objections of Robert Fox, Jr. and Robert Coon to Trustee's Application to Release from Seal all Documents so Filed. After the Hearing, this Court issued an Or-

der dated April 17, 1996, ordering most of the documents to be released from seal pursuant to the Trustee's application. The Order also provided that the document that was the subject of the Objection of Robert Fox, Jr. would not be released from seal, and left the matter decisional as to the document that was the subject of the Objection of Robert Coon. This Opinion resolves the Objection of Robert Coon. This Court has reviewed the arguments of Counsel, exhibits, and the entire record of the case. Based upon this review, the Court finds that the Objection of Robert Coon shall be sustained. Accordingly, the transcript of the deposition of Robert Coon, filed and sealed May 31, 1989, shall remain sealed.

### FACTS

Bell and Beckwith (hereafter "B & B") was a limited partnership that conducted a stock brokerage business in Toledo, Ohio. A liquidation proceeding under the Securities Investor Protection Act, as amended, 15 U.S.C. Section 78aa, et seq., was commenced with respect to B & B on February 5, 1983, after it was discovered that B & B's managing general partner, Edward P. Wolfram, Jr., had embezzled approximately Forty-seven Million Dollars ($47,000,000.00) from the brokerage. It appears that Wolfram's fraud commenced as early as 1973.

This case involved protracted litigation for a number of years, which resulted in a number of documents being sealed for various reasons. One of these documents so sealed is the transcript of the deposition of Robert Coon, a former partner in B & B. The Trustee now requests that all documents be released from seal to further the bankruptcy policy of open disclosure, and that there is no longer any benefit to the bankruptcy estate in keeping these documents sealed.

Mr. Coon objects to the release of his transcript. He claims that he gave his testimony in reliance that the documents would remain sealed. He references a Memorandum Opinion and Decision in this case, *SEC v. Bell & Beckwith,* Case No. 83–0132, issued on June 1, 1983, which states that on March 1, 1983, this Court Ordered that the general partners of B & B appear for the requested examination, that the attendance be limited, and:

> [T]hat the examinations of the Debtor's general partners shall be securely sealed by the notary or other officer recording the examinations ... The notary or other officer shall promptly file the examination transcript with the clerk of this court to be opened only upon further order of this court.

This matter is now before the Court for decision.

### LAW

The Bankruptcy Code provides in pertinent part:

**11 U.S.C. § 107. Public access to papers**

(a) Except as provided in subsection (b) of this section, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.

(b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—

> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or

> (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

The Bankruptcy Rules provide in pertinent part:

**Rule 7026. General Provisions Governing Discovery**

> Rule 26 F.R.Civ.P. applies in adversary proceedings.

**Rule 9018. Secret, Confidential, Scandalous, or Defamatory Matter**

On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information, (2) to protect any entity against scandalous

or defamatory matter contained in any paper filed in a case under the Code, or (3) to protect governmental matters that are made confidential by statute or regulation. If an order is entered under this rule without notice, any entity affected thereby may move to vacate or modify the order, and after a hearing on notice the court shall determine the motion.

The Federal Rules of Civil Procedure provides in pertinent part:

**Rule 26. General Provisions Governing Discovery; Duty of Disclosure**

(c) **Protective Orders.** Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(6) that a deposition, after being sealed, be opened only by order of the court.

### DISCUSSION

Matters concerning the administration of the bankruptcy estate are core pursuant to 28 U.S.C. Section 157. Thus, this case is a core proceeding.

■ In support of his objection to the Trustee's application to release documents from seal, Mr. Coon relies upon the authority in *Martindell v. International Telephone and Telegraph Corp.*, 594 F.2d 291 (2nd Cir. 1979). *Martindell* involved a stockholders' derivative suit on behalf of the plaintiff corporation against corporation officers and directors. During the pendency of the action, the plaintiffs took pretrial depositions of certain witnesses pursuant to a stipulation of confidentiality ordered by the District Court.

The stipulation provided that the fruits of the depositions, including transcripts of testimony and documents furnished by the defendants, were to be made available only to the parties and their counsel and not to be used for any purpose other than the preparation for and conduct of litigation. *Id.* at 293.

The United States, though not a party in the case, requested the transcripts for their possible use in criminal proceedings. *Id.* The Government argued that the District Court could not deny access to these transcripts out of solicitude for the deponents' Fifth Amendment rights because the testimony had been voluntarily given. *Id.* at 295. The Second Circuit Court of Appeals disagreed:

These arguments ignore a more significant counterbalancing factor[,] the vital function of a protective order issued under Rule 26(c), F.R.Civ.P., which is to, 'secure the just, speedy, and inexpensive determination' of civil disputes, Rule 1, F.R.Civ.P., by encouraging full disclosure of all evidence that might conceivably be relevant. This objective represents the cornerstone of our administration of civil justice. Unless a valid Rule 26(c) protective order is to be fully and fairly enforceable, witnesses relying upon such orders will be inhibited from giving essential testimony in civil litigation, thus undermining a procedural system that has been successfully developed over the years for disposition of civil differences. In short, witnesses might be expected frequently to refuse to testify pursuant to protective orders if their testimony were to be made available to the Government for criminal investigatory purposes in disregard of those orders.

\*    \*    \*    \*    \*    \*

After balancing the interests at stake, we are satisfied that, absent a showing of improvidence in the grant of a Rule 26(c) protective order or some other extraordinary circumstance or compelling need, none of which appear here, a witness should be entitled to rely upon the enforceability of a protective order against third parties, including the Government, and that such an order should not be vacated or modified merely to accommodate the

Government's desire to inspect protected testimony for possible use in criminal investigation, either as evidence or as the subject of a possible perjury charge.

*Id.* at 295–296 (footnotes and citations omitted).

The Sixth Circuit Court of Appeals cited *Martindell* in *Meyer Goldberg, Inc., of Lorain, et al. v. Fisher Foods, Inc.*, 823 F.2d 159, 162 (6th Cir.1987), which is controlling in this case. In *Meyer Goldberg*, a party in an antitrust action sought the use of protected material in a prior bankruptcy case involving other parties. The protected material included tape recordings between the principal officer of the defendants and others found in business records of the defendant by the Trustee who was appointed in the bankruptcy case. *Id.* at 160. The principal officer had requested and received a protective order sealing portions of the tapes. *Id.* A plaintiff in a subsequent antitrust case later sought the tapes seeking evidence in the later case. *Id.*

Though the *Meyer Goldberg* Court cited the holding in *Martindell*, the Court also stressed the policies in favor of open records:

As we observed recently, both civil and criminal trials are presumptively open proceedings and open records are fundamental to our system of law. *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1177–79 (6th Cir.1983), cert. denied, 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984). See generally Recent Development, Public Access to Civil Court Records: A Common Law Approach, 39 Vand. L.Rev. 1465 (1986).

While a district court has supervisory power over its own records and files, its discretionary powers to seal these records 'is "not insulated from review merely because the judge has discretion in this domain" 'because of the long-established legal tradition,' which recognizes 'the presumptive right of the public to inspect and copy ...' *In re Knoxville News[–]Sentinel Co.*, 723 F.2d 470, 473–74 (6th Cir.1983) (citing *Brown & Williamson*, 710 F.2d at 1177).

The *Knoxville News[–]Sentinel* case cited with approval an 1894 case which stated that 'any attempt to maintain secrecy, as to records of this court, would seem to be inconsistent with the common understanding of what belongs to a public court of record, to which all persons have the right of access.' *Id.* at 474. We also observed in that case the importance of affording interested persons a reasonable opportunity to be heard before sealing a court record, and stated that '[o]nly the most compelling reasons can justify non-disclosure of judicial records.' *Id.* at 476.

*Meyer Goldberg*, 823 F.2d at 163 (footnotes omitted).

The *Meyer Goldberg* Court also cited with approval the following standard adopted by the Court in *In re "Agent Orange" Product Liability Litigation*, 104 F.R.D. 559, 570 (E.D.N.Y.1985):

Given that proceedings should normally take place in public, imposing a good cause requirement on the party seeking the modification of a protective order is unwarranted. If access to protected fruits can be granted without harm to legitimate secrecy interests, or of no such interests exist, continued judicial protection cannot be justified. In that case, access should be granted even if the need for the protected materials in minimal. When that is not the case, the court should require that party seeking modification to show why the secrecy interests deserve less protection than they did when the order was granted. Even then, however, the movant should not be saddled with a burden more onerous than explaining why his need for the materials outweighs existing privacy concerns. Nonparty Access to Discovery Material in Federal Courts, 94 Harv. L.Rev. 1085 1092 (1981). (footnotes omitted).

*Meyer Goldberg*, 823 F.2d at 163.

In the case at bar, it is the policy concern for openness of judicial records which has compelled the Trustee to make the application for the release which is at issue in this case. Further, the Trustee notes that there is no longer any benefit to the estate in keeping the transcript sealed. However, the purpose of the examinations was to inquire

into the activities of Bell & Beckwith and to explore the personal assets of the partners should they ultimately become liable for the partnership's obligations. See this Court's Opinion concerning this same protective order in *SEC v. Bell & Beckwith,* Case No. 83–0132, issued June 1, 1983, page 1–2. Thus, the Trustee requested that the attendance at the examination be limited, and that the transcripts be sealed. *Id.* at 2. Accordingly, it was not unreasonable for Mr. Coon and the other partners to rely on the protective order as an assurance that the transcript would not be used for purposes other than that which the decree sought to safeguard. *Id.* at 7. Without such an assurance the witnesses could have exercised their Fifth Amendment prerogatives and refused to testify, or spoken with a lessor degree of candor. *Id.* At least to Mr. Coon, who was the only such witness to object to the release of deposition transcripts, this concern still exists.

Indeed, it is the very fact that Mr. Coon has objected, and the fact that no party has requested the evidence for use in another proceeding, which makes this case distinguishable from the *Meyer Goldberg* case. As the Court in *Meyer Goldberg* noted:

> It is very significant that neither [the party who sought the benefit of the protective order] nor the bankruptcy trustee on behalf of the plaintiff opposed the motion . . . to unseal the tapes.

*Meyer Goldberg,* 823 F.2d at 162. Further, in *Meyer Goldberg* the protected testimony was not given based upon the understanding that it would be subsequently protected. The evidence in *Meyer Goldberg* was not transcripts of depositions taken during the course of the proceedings, but business records, including tapes of discussions apparently about an alleged conspiracy. *Id.* at 160. As the Court noted:

> The record in this case nowhere reflects a confidentiality relied upon by any party now before the court, nor does it explain exactly on what basis confidentiality was properly claimed to suppress potential antitrust conduct and information from public knowledge or from a party seeking to uti-

lize this information in a related type of private antitrust action.

*Id.* at 163.

■ Finally, it appears to this Court that though the policy of open records was an important one for the *Meyer Goldberg* Court when deciding what showing may be necessary to open sealed records, there must nevertheless be a showing of some need beyond just the bare policy in favor of open records for a change in the protective order, at least when an objection is raised. That is, the court should at least minimally consider the use for which the evidence is requested. As the *Meyer Goldberg* analyzed:

> We observe that there is no stringent showing required under Rule 24(b) [concerning Intervention] that [the movant's] claim seeking intervention for purposes of discovery and the underlying action, both involving the same defendants charged with anti-competitive conduct, must have a strong nexus of common fact or law. [The movant's] purpose is not to pursue [the witness's] claim or the trustee's claim against the defendants, but rather to pursue a related claim in a somewhat similar time frame of alleged anticompetitive conduct, and to seek out discovery material to assist in that pursuit in which the public has a strong interest.

*Meyer Goldberg,* 823 F.2d at 164 (citations omitted).

Thus, in *Meyer Goldberg* there was a strong public interest in favor of allowing the documents to be released to assist in discovery in related litigation, and apparently no harm to the witness who benefited from the protective order, because they did not even bother to object. This is not the situation in the case at bar. Here, there is no related litigation or even anyone who specifically requests these documents for any particular purpose. Further, the protective order is still being relied upon by Mr. Coon, who has taken the time and expense to assert his interest in the matter.

■ This Court will also note that even where a reason is shown for the release of sealed evidence, such as for use in related litigation, a court could grant the same on

the condition that the evidence be subject to the same terms of the protective order in the original litigation. See *Kerasotes Michigan Theatres, Inc. v. National Amusements, Inc.*, 139 F.R.D. 102, 106 (E.D.Mich.1991).

For all these reasons, this Court concludes that the transcript of Mr. Coon should not be released from seal at this time. In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

**ORDERED** that the Objection of Robert Coon to Trustee's Application to Release from Seal all Documents so Filed shall be, and is hereby, *SUSTAINED.* Accordingly, the Transcript of Robert Coon, filed May 31, 1989, shall remain *SEALED.*