**UNITED STATES of America and State of Michigan, Plaintiffs,**

v.

**PRODUCTION PLATED PLASTICS, INC., Michigan City Plastics Co., Inc., and Michael Ladney, Defendants.**

**No. 4:87–CV–138.**

United States District Court, W.D. Michigan, Southern Division.

Nov. 6, 2000.

Michael L. Shiparski, Thomas J. Gezon, U.S. Attorney's Office, Western District of Michigan, Grand Rapids, MI, Carina J. Campobasso, U.S. Dept. of Justice, Tax div., Washington, DC, D. Ann Kline, U.S. Environmental Protection Agency, Washington, DC, Stuart Hersh, U.S. Environmental Protection Agency, Chicago, IL, for U.S.

Douglas W. Van Essen, Silver & Van Essen, Grand Rapids, for Production Plated Plastics, Inc.

Gary L. Finkbeiner, Jennifer M. Granholm, Attorney General, Natural Resources Division, Lansing, MI, for Frank J. Kelley, Michigan Natural Resources Com'n, Gordon E. Guyer.

### MEMORANDUM OPINION

McKEAGUE, District Judge.

Before the Court is the United States' motion, filed April 27, 2000 (Dkt.660), seeking to modify the Court's protective order as issued originally on June 26, 1989, and modified on July 2, 1998. Also before the Court is defendant Ladney's motion for access to certain trustee documents, filed May 31, 2000· (Dkt.661). After carefully reviewing the parties' arguments, the

Court shall grant in part and deny in part the federal government's motion to modify. The protective order shall be modified in accordance with the order accompanying this memorandum opinion. Defendant Ladney's motion for access ·shall be granted in part and denied in part.

## I.BACKGROUND

An extensive background of this case and its current status is found in the March 31, 2000, order of the Court. Briefly, after finding defendants in violation of the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6972 *et seq.*, Judge Benjamin F. Gibson[1] appointed a trustee to identify the assets of defendants and liquidate those holdings necessary to satisfy the judgment of the Court. The trustee, Environmental Trust Group, Inc. ("E.T.G.") compiled some nine boxes of documents-two of which E.T.G. identified as containing "confidential information."

Upon learning of E.T.G.'s investigation of assets owned by defendant Ladney, the Internal Revenue Service ("I.R.S.") issued a summons to E.T.G. under 26 U.S.C. § 7602 on May 1, 1998. The summons sought all documentation in E.T.G.'s possession relevant to Ladney's tax liability for the 1994 through 1996 tax years. In response defendant filed a motion to extend the protective order, which was granted by the Court on June 11, 1998.

Subsequently, the Court received the documents compiled by E.T.G. On April 29, 1999, the federal government filed a motion to modify the protective ·order. The motion was granted in part. While not allowing the wholesale release of the documents, the Court permitted all interested parties an equal opportunity to review the detailed index of documents and object to the release of those documents specifically requested by the government.

The government then filed its present motion to modify in which it identified the specific documents it seeks. Defendant Ladney filed a memorandum in opposition, to which the government replied. In the

alternative, Ladney seeks equal access to any documents provided to the government.

## II.ANALYSIS

### A.*The Federal Government's Prima Facie Case*

■ The Court earlier noted the failure of either party to articulate what legal standard should govern the showing the government must make to gain access to the documents gathered by E.T.G. In his memorandum in opposition, Ladney now proposes that the Court employ the "extraordinary circumstances" standard discussed in *Kerasotes Michigan Theatres, Inc. v. National Amusements, Inc.*, 139 F.R.D. 102, 104 (E.D.Mich.1991) and *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1428 (10th Cir.1990), *cert. denied*, 498 U.S. 1073, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991). In response, the government argues that the "extraordinary circumstances" standard should be rejected, and instead the standard for determining the good faith basis of an administrative summons found at 26 U.S.C. § 7602 and discussed in *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964) should govern.

■ Upon review of the parties' arguments and the applicable law, the Court agrees with the government that the four-part standard for reviewing an administrative summons applies in this instance. In the Sixth Circuit, a request to lift or modify an order sealing documents or records is generally left to the sound discretion of the trial court. *See Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 161 (6th Cir.1987); *Stavro ·v. Upjohn Co. (In re: Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig.)*, 664 F.2d 114, 120 (6th Cir.1981). While some other circuits apply an "extraordinary circumstances" standard, such instances are generally limited to requests to modify made by the federal government where it is a "collateral liti-

---

1. This case was reassigned to the undersigned   in May 1998.

gant." *See United Nuclear*, 905 F.2d at 1428 & n. 1 ("Other courts have assumed that the Second Circuit's 'extraordinary circumstances' test applies only when the government is the collateral litigant seeking to avoid duplicative discovery, because of the government's vast investigatorial resources and power for oppression."). As explained in the March 31, 2000, order, however, the federal government is and has been a party to this litigation. Accordingly, it is not a "collateral litigant" in this case, and the "extraordinary circumstances" standard-even if generally recognized in this circuit-would not apply in this instance.

■ The government's assertion that summons law applies here is well taken. The I.R.S. served the trustee with a summons on May 1, 1998. Although E.T.G. no longer possesses the documents and records, this does not alter the applicable standard. As explained by the Supreme Court in *Couch v. United States*, 409 U.S. 322, 329 n. 9, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), "[t]he rights and obligations of the parties [become] fixed when the summons was served, and the transfer [of the records does] not alter them."

■ Rejecting the proposition that the I.R.S. must establish probable cause to support an administrative summons, the Supreme Court found that under 26 U.S.C. § 7602(a), the Commissioner of the I.R.S. must make a four-part showing to support a summons:

He must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed-in particular, that the "Secretary or his delegate," after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect.

*Powell*, 379 U.S. at 57–58, 85 S.Ct. 248. *See also Kondik v. United States*, 81 F.3d 655, 656 (6th Cir.1996). "Once a prima facie case has been established, the burden shifts to the taxpayer to prove that enforcement of the summonses would be an abuse of the court's process.... This burden is a heavy one." *Kondik*, 81 F.3d at 656 (citations omitted).

A review of the affidavit of Revenue Agent Hildy S. Riegelhaupt shows that: (1) the investigation is for a legitimate purpose (i.e., to determine the correct federal income tax liability of Ladney for tax years 1994, 1995, and 1996); (2) the information sought is not already in the government's possession; and (3) the proper administrative steps have been followed. The final element to consider, therefore, is whether the information may be relevant to Ladney's tax liability for the tax years 1994 through 1996.

■ The relevancy standard under § 7602(a) is broader than the meaning accorded the term under Federal Rules of Evidence 401. Under § 7602(a), a document or record is relevant if it *might* throw light upon the correctness of the taxpayer's return. *United States v. Ritchie*, 15 F.3d 592, 596 (6th Cir.), *cert. denied*, 513 U.S. 868, 115 S.Ct. 188, 130 L.Ed.2d 121 (1994). The document or record does not have to be admissible in an action against the taxpayer. *United States v. Arthur Young & Co.*, 465 U.S. 805, 814, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984). As explained by the Supreme Court,

The purpose of [§ 7602] is not to accuse, but to inquire. Although such investigations unquestionably involve some invasion of privacy, they are essential to our self-reporting system, and the alternatives could well involve far less agreeable invasions of house, business, and records.

*United States v. Bisceglia*, 420 U.S. 141, 146, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975).

■ Yet, while the relevancy standard of § 7602(a) is broad, it is not so liberal as to permit the government to "wander at

will" through a taxpayer's or trustee's records. *See United States v. Northwest Pa. Bank & Trust Co.,* 355 F.Supp. 607, 613 (W.D.Pa.1973). The government must have some reasonable expectation, rather than idle hopes, that something might be discovered. *David H. Tedder & Assoc., Inc. v. United States,* 77 F.3d 1166, 1169 (9th Cir.1996).

■ Upon a thorough review of those specific documents sought by the government, the Court finds that while most satisfy the relevancy threshold of § 7602(a), several do not because they: (a) do not contain any information regarding Melea Ltd. or Ladney's ties (if any) to that entity; nor (b) any other information related to Ladney's income for tax years 1994 through 1996.[2] Nor do these documents appear to contain information that might reasonably lead to additional information relevant to the government's inquiry. Additionally, one of the requested documents was not included in the materials sent to the Court.[3] The rest of the documents do contain such information (or reasonably might lead to such information), and accordingly, the government has established its prima facie case as to those documents. The Court now turns to each of defendant Ladney's objections.

### B. *Documents Provided With Expectation of Confidentiality*

■ Ladney argues that he provided E.T.G. with certain documents and deposition testimony with an expectation that the "privacy of documents obtained would be preserved." Opposition Brief at 5. He maintains that

[h]ad he known that the IRS and other third parties might be given access to the entire discovery and work product that the Trustee might obtain or generate, Ladney might have objected to the appointment of a Trustee or certainly would have negotiated different provisions in the Appointment documentation that could have taken care of this issue.

*Id.* (footnote omitted). Ladney seeks to deny the I.R.S. all of the requested documents and records from the non-confidential log, as well as several documents from the confidential log.

Defendant's argument is not persuasive. First, the protective order denied access to confidential information "to any person or entity that is not a party to this action." As noted above and discussed in the March 31, 2000, order, the federal government is and has been a party to this action. In the protective order the Court put all the parties on notice that the order was subject to later modification or removal.

Further, even if Ladney has legitimate concerns regarding the confidentiality of certain documents and records, this does not foreclose access to the federal government in this case. As explained by the Sixth Circuit, if access to the materials "can be granted without harm to legitimate secrecy interests," a district court has the discretion to provide such access. *Meyer Goldberg,* 823 F.2d at 163. Under 26 U.S.C. § 6103, the I.R.S. is subject to strict confidentiality requirements involving a taxpayer's return and return information. The provisions of § 6103 are adequate to protect Ladney's

---

**2.** These records are: P31A (3/22/94); N/A (ICC online search re: Russbury Ltd.); P30A (IPI analysis); P29F (5/26/94); P29B (1995 internal document); P13D (12/31/91); P13C (1/19/94); N/A (2/28/95—letter re: GAIN marketing and licensing practices); P46B (6/17/94); P46B (5/29/94); N/A (highlights and analysis of N. Driggers Deposition of [7]/15/94); N/A (10/25/91—memorandum re: conveyance of property into trust); N/A (12/14/93—list of companies affiliated with Ladney); N/A (1/21/94—letter re: documents and information of defendant's business oper-

ations); P6D; P6E; P40M; Ladney—Last Day of Trial 8/13/92; Highlights of Ladney Testimony and Transcript of Last Day of Trial—8/13/92; Ladney Deposition—2/14/91; Ladney Deposition—10/17/90; Partnership Agreements and Licensing/Royalty Arrangements Pertaining to Mr. Ladney; Deposition of Michael Ladney 10/17/90 and 1/21/90; Deposition of Michael Ladney 10/17/90 and exhibits; Deposition of Michael Ladney 1/21/91.

**3.** P46B (6/6/94).

legitimate secrecy and confidentiality interests while allowing the government access to information that may shed light on Ladney's tax liabilities for tax years 1994 through 1996.

### C. *Privacy Rights*

■ Ladney also contends that the trustee may have accepted "suspicious information from third parties," possibly in breach of privacy or proprietary rights. He proposes that the Court hold an evidentiary hearing to determine the origins of the documents, and if it is proven that they were produced by theft or in breach of fiduciary duties owed to him, to order their return to the rightful owner. Although he does not specify whether he would likely be the "rightful owner," the Court presumes that this is his position.[4]

To be entitled to an evidentiary hearing in these circumstances, Ladney must present some factual support for his affirmative defense. *See Fortney v. United States,* 59 F.3d 117, 121 (9th Cir.1995); *see also United States v. Balanced Fin. Management, Inc.,* 769 F.2d 1440, 1444 (10th Cir. 1985) (finding that to be entitled to an evidentiary hearing, a taxpayer must "factually oppose the Government's allegations by affidavit"). Other than asserting that similar breaches of his fiduciary relationships have occurred in the past, however, Ladney offers little but conjecture. Further, the unpublished decision cited in support of his argument is inapposite here. In *Lert v. Nielsen,* No. 92 C 2216, 1992 WL 212592 (N.D.Ill. Aug. 27, 1992), the district court in the Northern District of Illinois denied a plaintiff's request for protective order to block defendant's demand for the return of documents. The defendant asserted that plaintiff, an ex-employee of defendant, stole the documents prior to his leaving the company. The court denied the plaintiff's motion, stating that it was unwilling to sanction any wrongful conduct by a party for the sake of discovery efficiency. *Id.* at *1.

■ With respect to those documents that Ladney suggests may have been provided to E.T.G. in violation of fiduciary duties owed to him, there is nothing in the record to suggest that the trustee solicited or otherwise improperly sought such materials. Even if information was provided to E.T.G. in breach of a fiduciary duty to Ladney, the Court finds that a reasonable balance is struck by permitting the I.R.S. access to the materials under the strict confidentiality requirements of 26 U.S.C. § 6103.

■ Likewise, Ladney's assertion that the trustee may have used private investigators to obtain information in violation of his rights of privacy also fails. The Supreme Court has stated in dicta that "[w]hen the Government has obtained [tax information] as a result of an unlawful summons, [the taxpayer's possessory] interest [in records] is violated and a court can effectuate relief by ordering the Government to return the records." *Church of Scientology of California v. United States,* 506 U.S. 9, 13, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992). Similar prophylactic standards are common in the Fourth Amendment search and seizure context, among others. Yet, application of such standards are generally limited to the criminal context, or in the civil context, to instances in which the party seeking discovery or to admit evidence is the same party that violated the defendant's privacy rights in the first instance. *See, e.g., United States v. Janis,* 428 U.S. 433, 454, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (holding that "exclusion from federal civil [tax] proceedings of evidence unlawfully seized by a state criminal enforcement officer" was not found "to have a sufficient likelihood of deterring the conduct of state police so that it outweighs the societal costs imposed by the exclusion").

As noted above there is no indication from the record that the trustee engaged in any bad-faith behavior with respect to

---

4. To the extent Ladney asserts the privacy or proprietary rights of other unrelated third-parties, however, his claim fails for lack of standing.

the indicated records. Further, even if a private entity violated the privacy rights of Ladney, then supplied that information to the third-party trustee, neither the actions of this Court (as current possessor of these documents) nor the federal government (as plaintiff requesting these documents) exhibit the type of bad-faith dealings or unconstitutional conduct that might otherwise support Ladney's position. The Court can find no legitimate deterrent effect that would result by barring the I.R.S. from the information sought simply because a private investigator may have supplied a third-party trustee with tainted information.

### D. Attorney–Client Privilege of Third–Party Trustee

█ Finally, Ladney states that all "Powell–Goldstein" and "Miller–Johnson" documents should be excluded as subject to E.T.G.'s attorney-client privilege. The Court provided E.T.G. ample opportunity to assert an attorney-client privilege in this case, but it declined to do so. Even if E.T.G. had submitted objections to the government's request for specific documents, Ladney's attempt to assert the privilege on behalf of it would still fail for lack of standing. *See United States v. Layton,* 855 F.2d 1388, 1406 (9th Cir.1988) (cases cited therein), *cert. denied,* 489 U.S. 1046, 109 S.Ct. 1178, 103 L.Ed.2d 244 (1989).

### III. MOTION FOR ACCESS

In his motion for access, Ladney reiterates his arguments for denying the I.R.S. access to the documents. In the alternative, he seeks equal access to the documents "so that he [can] adequately defend himself in any proceeding in which the IRS uses such documents." Motion ¶ 7. The government does not oppose this. Response Brief at 1. Accordingly, in the interests of fundamental fairness and due process, the Court finds good cause for granting equal access to Ladney.

### IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that the government's motion to modify the protective order (Dkt.660) is **GRANTED IN PART** and **DENIED IN PART. IT IS FURTHER ORDERED** that defendant Ladney's motion for access (Dkt.661) is **GRANTED IN PART** and **DENIED IN PART.** The I.R.S. shall have access to those items it specifically sought in its April 27, 2000, motion, with the exception of those documents that: (1) the Court found were not relevant under 26 U.S.C. § 7602; or (2) were not included in the materials submitted to the Court by E.T.G. *See supra* notes 2 & 3. The government's use of the documents is limited to the specific objectives listed in Revenue Agent Riegelhaupt's affidavit. The documents shall remain in possession of the office of the Clerk of the Court. Counsel for the I.R.S. and/or defendant Ladney may review and/or photocopy the documents at the parties' own expense. The parties shall make arrangements for access to the documents directly with the Clerk of the Court. An order consistent with this memorandum opinion shall issue forthwith.