**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0750n.06

**No. 12-4271**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ANDREA SODDU, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| PROCTER & GAMBLE COMPANY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE: ROGERS and COOK, Circuit Judges, and VAN TATENHOVE, District Judge.[*]

ROGERS, Circuit Judge. Andrea Soddu acquired stock options while working as a senior executive for Procter & Gamble (P&G), and now claims the right to exercise those options after terminating his employment with P&G. In September 2002, Soddu's supervisor asked him to resign from the joint venture Soddu had been leading, citing poor performance and allegations of sexual harassment against Soddu. Soddu complied, but later contested his resignation. After a mediation of this dispute, Soddu signed two negotiated separation agreements providing him with a severance package in exchange for a broad waiver of past and future claims. Shortly after signing those agreements, but prior to the official termination of Soddu's employment, Soddu exercised his vested stock options that had positive value, for which he was paid $1.5 million. When Soddu sought to

_____

[*]The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

exercise his remaining stock options in 2007, P&G denied his request and informed him that those options had been cancelled. Soddu then filed this suit seeking declaratory relief in federal district court. The district court granted P&G's motion for summary judgment, concluding that the waivers in the separation agreements precluded Soddu's claims. Soddu then filed a motion to unseal portions of the sealed transcripts of hearings before the court, which the district court denied.

The district court properly granted summary judgment for P&G because Soddu has not raised a genuine issue of material fact to show that his claim to the stock options in question was preserved. Soddu also has not shown that the denial of his motion to unseal was an abuse of the district court's discretion.

Soddu was employed by Procter & Gamble Europe NV (P&G Europe), a European division of P&G, from 1979 until December 2002. Over the course of his employment, Soddu received stock options as part of his compensation and benefits. These options were at all times governed by the P&G stock-option plan (the Plan), administered by P&G at its headquarters in Cincinnati, Ohio. Each grant of stock options was a contract between Soddu and P&G. Under the Plan, stock options remained valid until their expiration as long as the employee remained employed. After termination, the options remained valid and exercisable only in the event of a "special separation," defined as any termination of employment, other than a termination for cause or a voluntary resignation, that occurs prior to the time the participant is eligible to retire. Without a special separation, options generally had to be exercised on or before the end of employment.

Soddu was sent to Italy in June 2000 to lead a joint venture known as Fater. He was the highest-ranking executive for P&G Europe in the Fater joint venture. In September 2002, Soddu met with his supervisor, Paul Polman, President of P&G Europe. Polman informed Soddu that Polman was not happy with Fater's performance under Soddu's leadership. Polman also informed Soddu that claims of sexual harassment had been raised against Soddu. Polman asked Soddu to resign from Fater. Soddu complied with Polman's request, although he remained employed by P&G Europe.

Soddu then initiated an internal challenge to his "forced" resignation from Fater. He contested the manner in which Polman solicited his resignation, arguing that he had been coerced into resigning through the use of baseless sexual-harassment claims. Soddu wanted to remain employed by P&G Europe in another capacity, but was told that there was no position available for someone with his qualifications. Soddu and P&G Europe agreed to mediate their dispute, and following negotiations at which both sides were advised by counsel, they agreed to two separation documents.

The first document—the so-called Belgian agreement—was an agreement between Soddu and P&G Europe, under which Soddu's employment contract with P&G Europe was terminated as of December 31, 2002. The agreement provided Soddu with separation pay and benefits similar to what Soddu would have been granted by a Belgian court. Soddu received the equivalent of three years' pay, a prorated bonus, health insurance for one year, and other fringe benefits. Stock options were not specifically mentioned in this agreement. Article 9 of the Belgian agreement contains a waiver provision:

> As long as all above payments are made and conditions adhered to, both parties fully and explicitly *waive any further claim based on rights which could arise or have arisen* from or concerning the relationship that existed between the employer and employee.
>
> Parties further waive any claim related to any error in law or in fact, or omission with respect to the nature and scope of their respective rights and agreement.
>
> These waiver of rights are done, as concerns [Andrea Soddu], toward the employer but also *all companies of or associated to the Procter & Gamble group*, including but not limited to P&G Italia, P&G and P&G International Operations in Geneva and The Procter & Gamble Company in the US to which [Andrea Soddu] previously wrote. These previous claims, as they fall under the present waiver of rights and claims, are now closed and no further claims will be made by [Andrea Soddu].

R.17 at 106-07 (emphasis added).

The second document—the so-called Italian agreement—was an agreement between Soddu and Procter & Gamble S.R.L. (P&G Italy) which addressed the dispute over Soddu's resignation from Fater. The agreement indicates, in clause 3, that Soddu agreed to "waive all rights, claims and actions resulting from, or otherwise connected with, the employment relationship that occurred in Italy." *Id.* at 110. In clause 7, Soddu agreed:

> [T]o waive . . . any right or claim resulting from, or *for any reason connected with, the employment relationship*, with this waiver also holding for the period in which he was assigned to work for PROCTER & GAMBLE S.R.L. in Italy, as well as for any right or claim resulting from, or for any reason connected with, the working relationship or the holding of corporate positions or resignation from the same, and with an express declaration that these waivers are to be valid with regard to: (I) PROCTER & GAMBLE EUROPE NV; (II) PROCTER & GAMBLE S.R.L.; (III) The PROCTER & Gamble Company, as well as the bodies contemplated under the "PROCTER & Gamble Stock Plan"; (IV) Fater S.p.A., . . . .

*Id.* at 110-11 (emphasis added). Moreover, clause 7 provides a non-exhaustive list of rights and claims that Soddu agreed to waive, including "all rights, reasons and actions, regarding: differences

in remuneration, *compensation* or indemnities *of any type*, *fringe benefits*." *Id.* at 111 (emphasis

added). Finally, clause 10 includes language indicating that both

> parties expressly acknowledge that *their intention*, in executing the present report, has been not only to settle any possible reasons of dispute regarding the employment relationship, . . . but also *to prevent any possible reason of future dispute*, even if not expressly identified or inferable in the present agreement, but nevertheless resulting from or connected with the employment relationship being terminated.

*Id.* at 112 (emphasis added).

After signing the agreements, Soddu was given a letter from Richard Pease, Vice President

of Human Resources for P&G. The Pease letter stated:

> Your stock Options will be handled according to the Company Plan of the Procter & Gamble Company in Cincinnati. Specifically, this means you have the right to exercise your vested options until December 31st, 2002, with the exception of the stock options received in 1997, 1998 and as per the February 1999 grant, for which you have the right to exercise until January 31st, 2003.

The agreements were signed by all parties on December 19, 2002. Shortly afterward, Soddu

exercised all of his vested options that had positive value, for which he was paid $1.5 million. He

held on to other options that had, at that time, negative return value. In September 2003, Soddu was

informed that he would receive nearly two million euros when he turned sixty under the "Free

Pension Promise" program, which reflected bonuses Soddu had earned and deferred during his

tenure at P&G Europe. Like the stock options, the Free Pension Promise benefits were not

specifically mentioned in the Belgian agreement between Soddu and P&G Europe.

In 2007, Soddu tried to exercise his remaining options—which by that time had gained

value—but was denied by P&G. Soddu was told that those options had been cancelled. Soddu

attempted to exercise those options again in July 2008, and received no response. In October 2008, Soddu filed this suit in federal district court, seeking a declaratory judgment that he was entitled to all stock options that were granted and vested at the time of the separation agreements.

Because Soddu disputed the circumstances surrounding his termination from P&G, the district court held an evidentiary hearing in November 2010. At that hearing, Luisa Delgado, former Human Resources Director for P&G Europe, detailed her investigation into the allegations of sexual harassment against Soddu. Delgado testified that several female employees had alleged that Soddu engaged in inappropriate behavior towards them, and that this was a major reason why P&G Europe sought to end Soddu's employment. *See* R. 59 at 148-73. The transcript of this hearing was later sealed due to privacy concerns, by mutual agreement of the parties.

Soddu and P&G filed cross-motions for summary judgment. The district court granted summary judgment for P&G on Soddu's request for declaratory relief, but granted summary judgment for Soddu on P&G's counterclaim for attorney's fees. R. 111. The district court held that the broad, express, and unambiguous waivers in the agreements precluded Soddu's claim for relief. *Id.* at 11. The district court rejected Soddu's argument that the waivers did not apply against P&G because they were part of an agreement with P&G Europe, *id.*, and rejected the notion that the stock options were not included in the waivers because the agreements made no specific mention of stock options, *id.* at 12. The district court also noted that Soddu's reliance on the Pease letter was misplaced because the waivers were unambiguous, barring the court from considering such extrinsic evidence. *Id.* at 14.

Soddu moved to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), and moved to unseal the transcript of Delgado's testimony. The district court denied both motions in a written order. R. 136. On the motion to unseal, the district court found that Soddu's "vague assertion" that he needed access to the transcripts to enforce his rights under European privacy law was unpersuasive in light of the countervailing privacy concerns of the parties. *Id.* at 3-4. On the Rule 59(e) motion, the district court held that Soddu failed to show any clear error of law, newly discovered evidence, or manifest injustice requiring the court to grant the motion. *Id.* at 4. The district court noted that Soddu was improperly using the motion to "rehash[] prior arguments" in a way that Rule 59 does not allow. *Id.* at 5.

Soddu now appeals the district court's grant of summary judgment for P&G and the district court's denial of his motion to unseal the hearing transcripts.

Because Soddu agreed to a broad and unambiguous contractual waiver of his rights, in exchange for generous compensation, he waived his right to seek a declaration that he is entitled to the stock options in question. This court reviews the district court's judgment *de novo*, construing all evidence in the record, and all reasonable inferences, in the light most favorable to Soddu as the nonmovant. *King v. Taylor*, 694 F.3d 650, 661 (6th Cir. 2012). Although Soddu claims that his right to exercise the stock options was preserved, the district court properly held that the Belgian agreement, by its clear and express terms, waived Soddu's rights against P&G. Employee agreements to settle and waive claims for relief are enforceable when supported by valid

consideration. *See generally Nicklin v. Henderson*, 352 F.3d 1077, 1081-82 (6th Cir. 2003); *Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir. 1995).

While Soddu was employed by P&G Europe, and the Belgian agreement was a contract between Soddu and P&G Europe, the agreement contained language that clearly extended the waiver of rights to all related P&G entities. Article 9 of the agreement states: "These waiver of rights are done, as concerns [Soddu], towards the employer [P&G Europe] *but also all companies of or associated to the Procter & Gamble group*." R. 17 at 107 (emphasis added). This language unambiguously extends the waiver of rights to all related P&G entities, including the Ohio-based parent company that administers the Plan. When interpreting a contract, this court must "examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract," and must follow the plain and unambiguous language that the parties used to express their intent. *See Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 953 N.E.2d 285, 292 (Ohio 2011). The clear intent of the parties here was to waive Soddu's rights against P&G.

Soddu's attempt to minimize the extent of the waiver language in the Belgian agreement is unavailing. Soddu argues that the language refers to the other P&G entities only with respect to Soddu's prior claims, and that future claims were therefore not covered by this language. That position, however, is at odds with the contractual language, which clearly states that "no *further* claims will be made by [Soddu]." R. 17 at 107 (emphasis added). No rational juror could read this language as limiting the waiver against P&G to previous claims; the parties' clear intent was to

foreclose previous *and future* claims against P&G Europe and any other P&G entity. Soddu cannot now rewrite the contractual language to allow further claims against P&G.

Because the waivers in the agreements were clear and unambiguous, this court cannot look to extrinsic evidence in construing the contracts. *See Sunoco*, 953 N.E.2d at 292. "A court will resort to extrinsic evidence in its effort to give effect to the parties' intentions only where the language is unclear or ambiguous." *Kelly v. Medical Life Ins. Co.*, 509 N.E.2d 411, 413 (Ohio 1987). The Pease letter, therefore, cannot be considered in interpreting the separation agreements. The Pease letter was not part of the agreement that the parties reached, and Soddu has failed to show that the agreements were ambiguous in waiving his rights against P&G. Soddu cannot, therefore, now rely on the letter to raise a triable fact issue.

Soddu's argument based on the Free Pension Promise (FPP) program is likewise unpersuasive. Like the stock options, the FPP was not expressly mentioned in the separation agreements. Unlike the stock options, however, P&G has indicated to Soddu that it will pay him the benefits he earned under the FPP program, which reflect bonuses Soddu earned and deferred during his employment. Soddu argues that since he retained his entitlement to FPP benefits even though the FPP program was not expressly carved out of the separation agreements, he likewise retained his entitlement to the stock options. Soddu's argument fails to appreciate, however, the important differences between the two benefits and P&G's ability to treat different benefits differently.

Although Soddu waived his right to claim benefits not carved out of the separation agreements, P&G retained its discretionary ability to provide Soddu some benefits while denying

him others. The separation agreements' clear contractual language establishes that the agreements were intended to address every aspect of the employment relationship and broadly waive Soddu's rights against P&G. Nevertheless, even if Soddu waived his rights, P&G retained the discretionary ability to pay out benefits, particularly when those benefits reflect money an employee has already earned. The pension included money Soddu had earned but deferred, while the stock options were vested but unexercised—and therefore unearned—at the time they were cancelled. In short, P&G's decision to allow Soddu to recover post-termination FPP benefits has no bearing on the independent decision by P&G to deny Soddu the exercise of stock options that have been cancelled. In light of the broad, express waiver in the Belgian agreement, Soddu has waived his right to claim entitlement to the stock options.

In addition, the district court properly denied Soddu's motion to unseal the evidentiary hearing transcripts because Soddu failed to provide a sufficiently compelling reason to do so. The decision whether to lift or modify an order sealing documents is left to the sound discretion of the district court. *Meyer Goldberg, Inc. v. Fisher Foods Inc.,* 823 F.2d 159, 161 (6th Cir. 1987). Soddu claims that he requires access to the testimony of Luisa Delgado, who testified at the hearing about her investigation into sexual harassment allegations against Soddu, to substantiate possible violations of Soddu's privacy rights under European law. Soddu's reason for needing access to the transcripts does not necessarily override the countervailing privacy concerns of the parties in this case. The parties mutually agreed that the matters concerned were confidential, and the confidential matters are intertwined with those aspects of the transcripts to which Soddu demands access. The district

court did not abuse its discretion in weighing these competing interests and determining that the

transcripts should remain sealed.

The district court's judgment is affirmed.